THE STATE OF OHIO, APPELLEE, *v.* BORSICK, APPELLANT.

(No. E-77-50—Decided June 9, 1978.)

*Mr. Jack M. Levin* and *Mr. L. J. Hershkoff,* for appellant.
*Mr. John E. Moyer* and *Mr. Ronald R. Smith,* for appellee.

POTTER, P. J. After a jury trial, defendant, the appellant herein, was convicted of two counts of receiving stolen property the value of which was $150 or more (a violation of R. C. 2913.51), and one count of safecracking (a violation of R. C. 2911.31). Defendant's motion for a new trial was denied and he now appeals to this court and files the following assignments of error:

"I. The lower Court erred in overruling the Defendant's Motion to Suppress and in admitting into evidence State's Exhibits 1A, B, C, D and E, photographs taken by a police officer of scaffolding seized from a garage located at or adjacent to 2238 Campbell Street, Sandusky, Ohio, for the reason that said garage was searched and said scaffolding was seized pursuant to an invalid search warrant in violation of Article 1, Section 14 of the Ohio Constitution, the Fourth and Fourteenth Amendments to the United States Constitution, and Rule 41(C) of the Ohio Rules of Criminal Procedure.

"II. The lower Court erred in not conducting in camera inspections of the recorded pretrial statements of Vickie Benkey and Edith Bloomfield, witnesses called by the State of Ohio, when defense counsel upon learning of their existence on cross-examination moved that in camera inspections be had, and in failing to order that said statements be preserved in the records of the Court so that they would be available to this court on appeal.

"III. The trial Court erred when it failed to declare a mistrial after the prosecutor declared out loud during the Defendant's opening statement that the defense counsel could not make certain statements 'unless the Defendant is going to take the stand.' "

Sometime in March of 1977 the manager of the Sandusky Mall reported to police that scaffolding was missing from the Mall. On the basis of information received from a confidential informant, Detective Sergeant Baillie prepared an affidavit and obtained a search warrant covering property over which defendant had care, custody and control. The warrant was executed and police photographed and seized scaffolding later identified as that missing from the Sandusky Mall. In his first assignment of error appellant contends that the trial court erred in denying his motion to suppress the evidence seized pursuant to this search warrant. We agree for the reason that this evidence was seized pursuant to a search warrant which was based on a defective affidavit. The pertinent text of the affidavit is as follows:

"On March 28, 1977 the Perkins Police Dept. received a complaint, Number 6 DTD, 03-28-77, from the Sandusky Mall, Mall Manager, that $1434.00 worth of scaffolding had been stolen. On June 10, 1977 information was received from a reliable confidential informant that the scaffolding was seen in the garage of David C. Borsick. This informant further stated that in the garage is a cabinet with a wooden top, in the cabinet is a large amount of Marijuana. The reliable confidential informant is known as a competent, upright and outstanding businessman in the community."

We hold that the affidavit fails to satisfy the two-pronged test set forth in *Aguilar* v. *Texas* (1964), 378 U.S. 108, and adopted in *State* v. *Karr* (1975), 44 Ohio St. 2d 163, and Crim. R. 41(C). First, the affidavit does not show the factual basis for the confidant's information. There is no allegation that the informant personally saw any scaffolding in the garage. The information provided by the informant might only have been hearsay upon hearsay or based wholly upon casual rumor. Nor does the affidavit describe the underlying circumstances from which the informant concluded that the scaffolding was that stolen from the Sandusky Mall. The affidavit is purely conclusionary and contains no explanation of

why the informant reached this conclusion. Second, the informant's reliability or credibility is not established by the affidavit. The statement that the informant was "known as a competent, upright and outstanding businessman in the community" does not sufficiently show the underlying circumstances from which the affiant concluded that the informant was reliable or the information credible and without more cannot furnish a firm basis for a judicial determination of reliability or credibility. See *Hudson* v. *State* (1972), 16 Md. App. 49, 294 A. 2d 109, and compare with *Davis* v. *State* (1973), 129 Ga. App. 158, 198 S.E. 2d 913. Other allegations in the affidavits are insufficient to establish probable cause and there is no contention that the factual statements in the affidavit, bare as they were, were corroborated prior to the issuance of the search warrant. See *Spinelli* v. *United States* (1969), 393 U.S. 410; *United States* v. *Harris* (1971), 403 U.S. 573.

In our determination of sufficiency of probable cause to issue a search warrant we may consider only the information actually conveyed to the issuing judge. *Giordenello* v. *United States* (1958), 357 U.S. 480; *State* v. *Joseph* (1971), 25 Ohio St. 2d 95. In the case *sub judice* no testimony was transcribed and made part of the affidavit to supplement the factual statements in the affidavit just discussed. See Crim. R. 41(C). Therefore, our determination of probable cause is restricted to the affidavit. We hold that the affidavit was insufficient to show probable cause and that the search warrant issued thereon was invalid. Evidence seized pursuant to this warrant should have been suppressed. The first assignment of error is well taken.

The second assignment of error relates to witnesses whose testimony was relevant only to the charges arising from the theft of a safe from the Plumbrook Country Club.* Their testimony went toward establishing the whereabouts of defendant and others on the night the safe was stolen; they did not testify about the theft and, or, safecracking itself. During cross-examination of these witnesses, defendant's

---

* Defendant's counsel made a motion to sever the charge involving the scaffolding from the other two charges. The court denied the motion and all three charges were tried together. Defendant does not raise the severance issue on appeal.

counsel discovered that both of them had talked to the prosecutor a few days before testifying and that their discussions with the prosecutor had been recorded on tape. Defendant's counsel made separate motions for an in camera inspection of each witness' "statement" pursuant to Crim. R. 16(B)(1)(g). The record indicates that the trial judge did not hear the tape recordings or read transcriptions thereof before ruling on the motions. Both motions were denied, but the basis for the court's decisions does not affirmatively appear from the record. With regard to the first motion concerning Vickie Benkey, the prosecutor contended before the bench that Crim. R. 16(B)(2) *infra* protected the "statement" from disclosure; that the "statement" was not discoverable because it was the work product of the prosecutor's office; and that there was no "statement" of Vickie Benkey in existence because the tape recorded session referred to by Ms. Benkey during cross-examination was an interview between the prosecutor and a third party with Ms. Benkey present but speaking on only a few points during the session. The trial judge did not specify any of the above reasons, nor any other as the basis for his decision to deny defendant's motion for an in camera inspection of Ms. Benkey's "statement." With regard to the "statement" made by Edith Bloomfield, the prosecutor did not contend that that tape recorded interview involved persons other than Ms. Bloomfield and defendant's motion for an in camera inspection of Ms. Bloomfield's "statement" was denied without hearing arguments from either side, the trial judge stating only that "we have been through that before." Although defendant made a specific request that Ms. Benkey's "statement" be preserved for the record, neither Ms. Benkey's "statement" nor that of Ms. Bloomfield was preserved and the "statements" at issue are not part of the record before us.

In view of the state of the record, we cannot determine the basis for the trial court's decision, nor can we decide whether a producible statement or statements existed or whether failure to produce the statement or statements for purposes of cross-examination prejudiced defendant. We note, however, that before this court the state confined its argument on this assignment of error to the sole ground that the statements were protected by the work product doctrine.

It cites *State* v. *Rhoads* (1910), 81 Ohio St. 397; *State* v. *Thomasson* (1950), 58 Ohio Law Abs. 402; and *State* v. *Miller* (1961), 88 Ohio Law Abs. 533, appeal dismissed 172 Ohio St. 554, in support of this argument. The first paragraph of the syllabus in *Rhoads* held that it was error for the trial court to order the prosecuting attorney to allow defense counsel to inspect the transcript of a "private" interview between the city solicitor and a person who later testifies on behalf of the state at trial. That part of the *Rhoads* syllabus was explicitly overruled in the third paragraph of the syllabus in *State* v. *White* (1968), 15 Ohio St. 2d. 146. *State* v. *Thomasson* involved both pretrial discovery and a request for inspection made at trial. Pretrial discovery is not involved in the instant case. With regard to the inspection request made by defense counsel during trial, the *Thomasson* court allowed the defense to inspect the shorthand notes from which the stenographer-witnesses testified as to their recollection of interviews between the prosecution, police and a witness. Relying on *State* v. *Rhoads* and other cases, the *Thomasson* court refused to allow defense counsel to inspect the typewritten transcription of those notes which were in the possession of the prosecutor. In the *Miller* case, at trial defense counsel asked to inspect written statements made by a prosecuting witness to police officers. The prosecutor had relied heavily on the statements to refresh the recollection of the witness and offered the statements into evidence if defense counsel would agree to such procedure. Defense counsel did not agree, the statements were not admitted, and the court denied defense counsel's request for inspection. Neither the *Thomasson* decision nor the *Miller* decision was based upon a specific finding that the matter sought to be inspected had the special character of a work product. Rather, both holdings were based upon the then-accepted rule, as announced in *Rhoads,* that inspection of pretrial statements in criminal cases was mandated only in rare instances, such as when the witness actually reads from the statement while on the stand. That general rule was abrogated by *State* v. *White, supra,* and the enactment of Crim. R. 16.

It should also be noted that at the time *Rhoads, Thomasson,* and *Miller* were decided there was no procedure for an initial in camera inspection of the statements by the

trial judge. The requests for inspection in those cases thus asked for complete disclosure of the full statements without the limitation that the requested statement be found to be inconsistent with the witness' testimony at trial. Thus, even aside from the fact that the cases cited by the state do not involve a specific application of the work product rule and are based upon a general principle no longer accepted in Ohio, the cited cases can be factually distinguished from the case *sub judice.* Unlike the limited request for an in camera judicial inspection made in the instant case, the cited cases involved requests for total disclosure of the complete statement without the intervention of a judicial inspection.

Crim. R. 16(B)(1)(g) now provides:

"In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

Clearly, that provision makes no exceptions on the basis of to whom such statement was made. Whatever remains of the work product rule in criminal cases is delineated in Crim. R. 16(B)(2) which provides:

"Information not subject to disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the in-

vestigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."

This subdivision prevents *pre-trial* discovery or inspection of the materials therein listed but this criminal work product rule does not totally exclude discovery of statements made by witnesses to prosecutors or other state agents. Inclusion of the words "Except as provided in [subsection] (B)(1)***(g)" in Crim. Rule 16(B)(2) insures that defense counsel upon proper motion will be granted an in camera inspection of a witness' statement even when the statement is made to a prosecutor or state agent, once that witness has testified at trial. Thus, once it is determined that a statement exists, and the witness who gave the statement has testified at trial, the work product rule cannot bar an in camera inspection of that statement. See Schroeder-Katz, 2 Ohio Criminal Law 192, 195, Discovery and Inspection, Authors Text; Clancy and Weiss, Perpetuation and Discovery, Reference Manual for Continuing Legal Education, Ohio Rules of Criminal Procedure 5.01, Section V.

We note that in *Goldberg* v. *United States* (1976), 425 U.S. 94, the United States Supreme Court held that the work product doctrine does not bar the production of writings otherwise producible under the Jencks Act, Section 3500, Title 18, U.S. Code, even where the statements were given to a government trial attorney in preparation for trial. Therein the court observed that the policies giving rise to the work product doctrine—primarily, the protection of the attorney's mental processes and the interest of the state in preserving the secrecy of the inner workings of its investigative process—are adequately safeguarded by the Jencks Act itself which limits in camera inspections to statements which can "fairly be said to be the witness' own." The term "statement" as used in Crim. Rule 16(B)(1)(g) is limited to a written statement signed or otherwise adopted and approved by the witness, a recording of the witness' words or a transcription thereof and a substantially verbatim recital of the witness' statement written in a continuous narrative form. See *State* v. *Johnson* (1978), 62 Ohio App. 2d 31. Thus, the definition of the word "statement" and its inherent limitation on the producibility of writings or recordings pursuant to Crim. Rule 16(B)(1)(g) properly insures that trial strategy,

investigative functioning and similar matters will not be revealed to defense counsel through the production of an item pursuant to Crim. Rule 16(B)(1)(g). In view of the clear language of Crim. Rules 16(B)(1)(g) and 16(B)(2) and in light of the protection afforded the prosecution by the limited definition of the word "statement," we find that the work product doctrine cannot and does not bar in camera inspection of otherwise producible statements made by witnesses to prosecutors or state agents.

Where the threshold issue of the productibility of a "statement" under Crim. R. 16(B)(1)(g) is presented to the trial court, as it was in the case *sub judice,* the trial judge should listen to the tape recording or read an accurate transcription thereof and then conduct an in camera hearing with both attorneys present, taking extrinsic evidence on the nature of the statement and, or, the circumstances of its taking, if necessary. The sole purpose of this hearing is to determine whether the documents or tapes, in whole or in part, are producible statements under Crim. R. 16(B)(1)(g). See *Palermo* v. *United States* (1959), 360 U.S. 343; *Campbell* v. *United States* (1961), 365 U.S. 85; *Campbell* v. *United States* (1963), 373 U.S. 487. If it is determined that a producible statement does exist, then the trial judge should proceed to determine whether the statement and the witness' testimony are inconsistent and whether defense counsel should be given the statement for use in cross-examining the witness.

We hold that the trial court committed error in ruling on defendant's motions without hearing the tapes or reading accurate transcriptions thereof and also hold that the trial court committed error in failing to order that the statements at issue be preserved for the record on appeal. While defense counsel made a specific request for preservation only with regard to the "statement" of Ms. Benkey, and it is better practice for defense counsel to make separate specific preservation requests as to each statement, we find that Crim. R. 16(B)(1)(g) mandates preservation of "statements" for purposes of appeal and also find that the trial court's duty in this regard is not conditioned upon a specific request from defense counsel. The second assignment of error is well taken.

The third assignment of error concerns a remark or ques-

tion by the prosecutor during defendant's opening statement. The opening statements were not transcribed by the court reporter. Therefore, the record of this incident is not before this court. The parties agree that immediately prior to the prosecutor's remark, defense counsel stated that the evidence would show that defendant was about 40 years old and married. Viewed in the context provided by both parties in their briefs, we find that the prosecutor's remark was not a prejudicial comment on the defendant's failure to testify since it was not yet known whether defendant would testify. Rather, the prosecutor made an inquiry, albeit poorly phrased, as to whether defendant would take the stand and an objection to continued references to defendant's good character and reputation if defendant would not testify or otherwise put his character into issue. The remark was not prejudicial, it was, therefore, not error to deny a mistrial on that basis. We find the third assignment of error not well taken.

Our decision on the first assignment of error and our review of evidence in the record other than the products of the illegal search which goes toward establishing that defendant did receive or retain the stolen scaffolding mandates a reversal of the trial court's judgment on count 3 of the indictment and a remand for new trial on that count.

With regard to the second assignment of error, the state has not contended that the testimony of the witnesses involved was not probative or was merely cumulative. Because we have held that the trial court erred in denying the in camera inspection motion and also erred in failing to make the contested statements part of the record, we reverse the judgment on counts one and two of the indictment and remand the cause to the Erie County Court of Common Pleas for a proper hearing on defendant's motion for an in camera inspection of the statements. The court shall then determine whether any inconsistencies exist between the statements and the testimony. If the trial court finds that inconsistencies do exist and that these inconsistencies were prejudicial and prevented defendant from receiving a fair trial, then the trial court shall order a new trial. If the trial court finds that these recordings or transcripts were not "statements" for purposes of Crim. R. 16(B)(1)(g), or determines that there were no prejudicial inconsistencies and that defendant had a fair

48

trial, then the trial court shall re-enter a new judgment upon the jury verdict of guilty.

The judgment of the Erie County Common Pleas Court is reversed and the cause is remanded.

*Judgment reversed and cause remanded.*

BROWN and CONNORS, JJ., concur.