THE STATE OF OHIO, APPELLEE, *v.*
OK SUN BEAN, APPELLANT.

(No. L-83-205—Decided
November 25, 1983.)

Mr. *Anthony Pizza,* prosecuting attorney, and Mr. *James D. Turner,* for appellee.

Mr. *Sheldon S. Wittenberg,* for appellant.

HANDWORK, J., This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.

On February 17, 1983, defendant-appellant, OK Sun Bean, filed a motion to suppress certain evidence seized during a search of her establishment pursuant to a search warrant. On March 7, 1983, after a suppression hearing, the trial court denied appellant's motion. On April 21, 1983, appellant entered a plea of "no contest" to the charge of "procuring," a violation of R.C. 2907.23, to which the trial court then entered a finding of guilty.[1] Appellant was thereafter sentenced to a term of imprisonment on May 25, 1983. In bringing this appeal from the trial court's denial of her motion to suppress, appellant presents two assignments of error for our review:

"I. The facts in the affidavit fail to provide sufficient information that would allow a detached magistrate to find probable cause to issue a search warrant.

"A. The underlying circumstances given by the affidavit are conclusionary and insufficient to support a finding of probable cause by a detached magistrate.

"B. The information upon which the affiant relied in drafting his affidavit was legally insufficient to support a finding of probable cause.

"C. The affidavit fails to provide sufficient information that would allow a detached magistrate to find probable cause that a crime had been committed.

"II. The affiant, knowingly or with reckless disregard for the truth, made false statements in the warrant affidavit."

On December 14, 1982, Detective Patrick Gladieux obtained a search warrant for the premises of the Fugi Health Club, located at 5142 Ryan Road in Toledo,

---

[1] Appellant was initially indicted for promoting prostitution, a violation of R.C. 2907.22.

Ohio. The search occurred two days later on December 16. The affidavit for the search warrant alleged that:

"There is now being concealed [at the Fugi Health Club] certain property, namely:

"Prostitution paraphernalia, to-wit:

"Journals, ledgers, records and documents and monies which are evidence relating to prostitution activity, and devices, aids and/or items used in sexual activity * * * in violation of * * * Section 2907.22(A)-(I) of the Ohio Revised Code[.]"

The affidavit further alleged:

"The facts tending to establish * * * grounds for issuance of a search warrant are as follows:

"This affiant officer has worked in the area of prostitution and assorted offenses as defined in the ORC pursuant to Section 2907.00 [sic] and in the course of this affiant's experiences, records to include ledgers [sic], customers identities [sic], appointment books and other standard forms used to support prostitution activity as well as instrumentalities used in acts of prostitution are consistant [sic] in this type of illegal enterprise.

"This affiant has been involed [sic] in the arrest and conviction of over 200 prostitutes in the past five years and has worked in the undercover capacity on brothel investigations on over ten occasions.

"On 11/25/82, prostitution warrants were issued by Officer Lonnie Wade for activities that occurred at the Fugi Health Club, 5142 Ryan Rd., Toledo, Lucas County, Ohio.

"On 11/29/82, a prostitution warrant was issued by Det. Carl Schliesser for activities which occurred at the Fugi Health Club, 5142 Ryan Rd., Toledo, Lucas County, Ohio.

"These prostitution warrants are for employees of the Fugi Health Club, 5142 Ryan Rd., Toledo, Lucas County, Ohio, in which money was exchanged for the illegal sexual activity."

The narrow issue before us in this case is whether the affidavit, on the strength of the foregoing allegations, contains facts sufficient to allow a reasonable inference of probable cause to search. For the following reasons, we hold that it does not.

## I

### A

Initially, we observe that appellant challenges the affidavit as seeking items which, in themselves, are not illegal, i.e., possession of them "is not per se a criminal act." This particular objection to the affidavit lacks serious merit. First, when read in context, the affidavit clearly does not allege illegal possession as the underlying crime of which these items constitute the evidence. Rather, the affidavit alleges that the specified items "are evidence relating to prostitution activity," and further refers to R.C. 2907.22, which defines and proscribes the offense of "promoting prostitution," i.e., the enterprise or business of prostitution. Quite obviously, journals, ledgers, records (in particular, business-type records), customer lists, money (in the form of checks or cash) and other documents are highly relevant as evidence of an on-going prostitution business. In this regard, Crim. R. 41(B) provides:

"* * * A warrant may be issued under this rule to search for and seize any: (1) evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed."

The items sought as evidence here were evidence of criminality — things sufficiently connected with the crime of promoting prostitution to be legitimate objects of a police search, assuming probable cause, of course. And this brings us to the specific question involved here.

## B

In response to appellant's first assignment of error, the prosecution rotely cites *Illinois* v. *Gates* (1983), 76 L.Ed. 2d 527, for the proposition that the controlling test in evaluating the legal sufficiency of an affidavit is whether probable cause appears from a review of the "totality of the circumstances." This assertion, however, belies a misreading of *Illinois* v. *Gates* on two levels, which can be dealt with as follows.

First, what is the specific factual context? *Illinois* v. *Gates* involved the issuance of a search warrant based on police corroboration of an *anonymous informant's detailed "tip."* Here, we have no informant (anonymous or otherwise) and certainly no "tip." The information in the present affidavit, such as it is, was supplied entirely by an affiant-police officer, not an informant. Since neither an informant's credibility and veracity nor the "basis of his knowledge" — the traditional two-pronged inquiry — are at issue here, *Illinois* v. *Gates* has little relevance factually.

Second, given the present facts, what is the proper standard of appellate review? As it is usually stated, a reviewing court's task is to ensure, through a conscientious review of the affidavit, that the issuing magistrate had a "substantial basis" for concluding that probable cause existed to search. See *United States* v. *Harris* (1971), 403 U.S. 573, 581; *United States* v. *Ventresca* (1965), 380 U.S. 102, 108; *Jones* v. *United States* (1960), 362 U.S. 257, 271; cf. *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 178-179 [16 O.O.3d 201] ("As long as the magistrate is presented with a *substantial basis* to credit the hearsay, so that he will be able to make a neutral and detached determination of probable cause, the affidavit will be sufficient in that regard." [Em-

phasis added.]). Cf., also, *Illinois* v. *Gates, supra,* at 547-548. In addition, Crim. R. 41(C) mandates that:

"A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and *establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.* * * *" (Emphasis added.)

The "substantial basis" standard of review further requires the reviewing court to ascertain whether the issuing judge acted as "a neutral and detached magistrate," which is typically understood to mean not only that he was functionally distinct from the law-enforcement process, but that he drew *rational inferences from the facts presented in the affidavit.* See *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 449-453; see, also, *Johnson* v. *United States* (1948), 333 U.S. 10, 13-14; *State* v. *Kiraly* (1977), 56 Ohio App. 2d 37, 44 [10 O.O.3d 53]. Such is the standard of review that we adopt in this case with an important concomitant requirement: the affidavit's legal sufficiency may be determined *only* from the information actually furnished to the issuing judge. In most cases — and this is one of them — an appellate court's review is limited to facts alleged within the "four corners" of the affidavit.[2] See *Whiteley* v. *Warden* (1971), 401 U.S. 560, 565, fn. 8; *State* v. *Graddy* (1978), 55 Ohio St. 2d 132, 134, fn. 1 [9 O.O.3d 109]; *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 177, fn. 5 [16 O.O.3d 201]; see, also, *State* v. *Joseph* (1971), 25 Ohio St. 2d 95, 96-97 [54

---

[2] Crim. R. 41(C) makes provision for an affidavit hearing, if needed, and further provides that the affiant's testimony from such hearing shall be admissible at a subsequent hearing on a motion to suppress. In this case, no affidavit hearing was held.

O.O.2d 228]; *State* v. *Borsick* (1978), 62 Ohio App. 2d 39, 41 [16 O.O.3d 79].

## C

This court has twice reviewed the legal sufficiency of challenged affidavits. See *State* v. *Daniels* (1981), 2 Ohio App. 3d 328, and *State* v. *Borsick* (1978), 62 Ohio App. 2d 39 [16 O.O.3d 79]. Both the *Daniels* and *Borsick* cases involved affidavits containing information emanating from an informant. Notwithstanding this fact, the scope of review suggested by both cases differs significantly, and we take the present opportunity to resolve the apparent inconsistency.

In *State* v. *Borsick,* we limited our review of the magistrate's probable cause conclusion *strictly to what the affidavit reflected.* See *State* v. *Borsick, supra,* at 40-41. In essence, we held that certain factual deficiencies precluded a rational inference of probable cause and found the search warrant issued thereon invalid. Three years later, in *State* v. *Daniels,* a majority of this court held in paragraph one of the syllabus:

"Where the affidavit in support of a warrant, considered in its entirety, presents a sufficient basis for finding probable cause to search, an omission which amounts to a technical error in draftsmenship will not be fatal to the warrant issued pursuant thereto."

In supplementing this holding, the majority opinion stated at 329-330:

"[In this case,] the trial court found that the affidavit did not meet the second prong of [the now well-known *Aguilar-Spinelli*] test in that the reliability of the undisclosed source was not established. We note, at the outset of our discussion, that the word 'notified' rather than the word 'informed' was used in the paragraphs numbered 3 and 4 of the affidavit. The use of the word 'notified' implies that the source of the information was an official report rather than an informant's tip. Further, considering the entire affidavit, such an inference is strengthened by the type of information and manner of presentation. In fact, the information relied upon had either been received from radio transmitted police reports from neighboring counties or from local sheriff's department investigative work. Had these sources been disclosed in the affidavit, the reliability of the information would have been established. [Citations omitted.]

"* * * We, however find the above related facts relevant in establishing that the omission of the identity of the source was unintentional and not in bad faith. The exclusionary rule was adopted as a deterrent to prevent abusive practices in search and seizure cases and, further, to promote respect for constitutional protections from unreasonable search and seizure. [Citations omitted.] Neither of these purposes was served in this case. The defect in the affidavit herein was essentially a technical error, an omission, inadvertently made by an officer making a good faith effort to comply with the law. * * *"

Reasonable, common-sense inferences are, of course, permitted — but those inferences are valid only when drawn *from facts actually alleged in the affidavit.* To hold otherwise would render warrant procedures meaningless and superfluous. See *Whiteley* v. *Warden, supra,* at 564-565 ("The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant."). Cf., also: "* * * [A]n otherwise insufficient affidavit cannot be rehabilitated by [subsequent] testimony concerning information possessed by the affiant when he sought the warrant *but not disclosed to the issuing magistrate.* [Citation omitted.] A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless." *Id.* at 565, fn. 8. (Emphasis added.)

We hold that, in reviewing an affidavit's legal sufficiency, an appellate court may not "infer" the existence of other facts, beyond the face of the affidavit, which then operate as inferential "gap-fillers" to help bolster a probable cause determination for which genuine facts are lacking. Facts not included in the affidavit may not be considered in determining whether it establishes probable cause to search. This is essentially the approach reflected by *State* v. *Borsick, supra,* at 40-41. *State* v. *Daniels* improvidently suggested (or can be read as suggesting) a contrary approach.[3] See *State* v. *Daniels, supra.* To the extent that it does, language in *State* v. *Daniels* inconsistent with our holding today is explicitly disaffirmed.

We quite agree that "courts should not invalidate * * * warrant[s] by interpreting the affidavit[s] in a hypertechnical, rather than commonsense, manner." *United States* v. *Ventresca* (1965), 380 U.S. 102, 109. Affidavits should be (and must be) construed, interpreted and reviewed in a common-sense and realistic fashion. *United States* v. *Seta* (C.A. 6, 1982), 669 F. 2d 400, 402.

However, in assessing a judge's probable cause conclusion, a clear and lasting distinction must be kept between technical defects and factual deficiencies — the former go only to draftsmanship; the latter go directly to the issue of probable cause. To be sure, negligent or good faith omissions, which amount to nothing more than the mere technical errors of laymen, should not invalidate an affidavit which, on its face, factually establishes probable cause to search. This is what is meant by the Supreme Court's injunction against hyper-technically construing affidavits, lest we discourage police officers. altogether from seeking search warrants before acting. See *United States* v. *Ventresca, supra;* cf. *Illinois* v. *Gates, supra,* at 546.

But no amount of good faith, or "common-sense" construction, will cure an affidavit lacking enough facts from which a "neutral and detached magistrate" could conclude, rationally and logically, that probable cause exists to search. Indeed, common sense would instinctively dictate otherwise. See *State* v. *Kiraly, supra,* paragraph one of the syllabus: "Search warrants may issue only upon a showing of probable cause. To conclude that a reasonable inference of probable cause was drawn by the magistrate, the affidavit must set forth sufficient underlying circumstances to support the inference of probable cause. * * *" Cf. *Illinois* v. *Gates, supra,* at 565 (White, J., concurring): "* * * I would apply the exclusionary rule when it is plainly evident that a magistrate or judge had no business issuing a warrant. [Citations omitted.] Similarly, the good-faith exception would not apply if the material presented to the magistrate or judge is false or misleading, [citations omitted] *or so clearly lacking in probable cause that no well-trained officer could reasonably have thought that a warrant should*

---

[3] In *State* v. *Daniels* (1981), 2 Ohio App. 3d 328, 331-332, we note that Judge Potter dissented, stating, in part:

"A review of the affidavit indicates that the information relied on by the affiant was not attributed to any source. Probable cause to search was not illustrated on the face of the affidavit. Since the affidavit is deficient, it was too late in the common pleas court to supplement it by matters not of record before the issuing magistrate. * * * For these reasons, the determination of the trial court [to suppress the evidence] should be affirmed.

"The majority opinion includes 'facts' beyond the affidavit and outside the record of the case, to show that the reliability of the information was established. In light of this, the majority holds that the omission of the identity of the source was unintentional and not in bad faith. Such a finding is contrary to the holding in *Aguilar* v. *Texas* (1963), 378 U.S. 108, and its progenies. * * * The good faith of the affiant, while commendable, is inapplicable to this case and should not be considered." (Citations omitted.)

*issue.*" See, also, *id.* at 565, fn. 17: "* * * I do not propose that a warrant clearly lacking a basing in probable cause can support a 'good-faith' defense to invocation of the exclusionary rule."

The issue, then, is essentially "either-or." No amount of evasion, equivocation or appeals to flexibility and "reasonableness" will alter that basic analytical inquiry — either there are enough facts made out to furnish probable cause for issuing the warrant or there are not. If there are not, as was the case here, then the "judge had no business issuing [the] warrant" in the first place. *Illinois* v. *Gates, supra,* at 565 (White, J., concurring).

## II

In reviewing the affidavit herein, we find that virtually no facts were alleged from which the issuing court could reasonably infer probable cause to search appellant's business for evidence of a violation of R.C. 2907.22. Thus, the court did not have a "substantial" factual basis for issuing the search warrant.

In essence, Officer Gladieux alleged only two grounds on which to base the warrant. First, the officer recited his past experience, describing in detail the evidence usually found in cases involving what may be called the "business aspects" of prostitution activity. Second, the officer then asserted that some two weeks earlier, on different dates, Officers Lonnie Wade and Carl Schliesser secured "prostitution [arrest] warrants" for unnamed persons who had engaged in sex-for-hire at the Fugi Health Club. (The affidavit described these unknown persons only as "employees of the Fugi Health Club.")

These "facts" are all that the affidavit offered to support the search warrant. Indeed, one may with good reason question whether the recital of an officer's past experience and his bare assertion that two arrest warrants were issued two weeks earlier constitute pres-

ent "facts," as that term is understood in its legal — and common-sense — context. Cf. *United States* v. *Ventresca, supra,* at 118 (Douglas, J., dissenting): "But are these 'facts' really facts? A statement of 'fact' is only as credible as its source. [The affiant] evidently believes these statements to be correct; but the magistrate must, of course, know something of the basis of that belief."

Undoubtedly, the affiant-officer's disclosure of his past experience in these matters is helpful to understanding *why* he believes what he believes, and its inclusion neither supports nor detracts from the affidavit's sufficiency. But here the officer's past experience only related to why he presently *suspected* that the Fugi Health Club contained evidence of an ongoing prostitution business, such evidence being itemized in the affidavit *sub judice* as "concealed property." However, standing alone, it is not a "fact" tending to support a finding of probable cause. It is well-established that "probable cause [means] more than mere suspicion." *Brinegar* v. *United States* (1949), 338 U.S. 160, 175; see, also, *Nathanson* v. *United States* (1933), 290 U.S. 41, at 46: The "mere affirmance of suspicion and belief without any statement of adequate supporting facts" is insufficient to show probable cause.

Most importantly, nowhere in the affidavit does the affiant allege his *personal observation* of the objects for which the search warrant was sought. There is no allegation whatsoever that Officer Gladieux personally observed any of the items stated as being evidence of on-going criminal activity at the Fugi Health Club. He never alleged that he personally saw any sex-for-hire transaction occur or that he was personally solicited by one of appellant's employees. Yet, in cases where the affiant-officer is seeking a search warrant based on information purportedly acquired by him, and not obtained through an informant, the officer's personal knowledge and first-hand observations

are the *sine qua non* for probable cause to search. Cf. *State* v. *Dodson* (1974), 43 Ohio App. 2d 31 [72 O.O.2d 190], certiorari denied (1975), 423 U.S. 834, paragraph one of the syllabus: "When an affidavit for a search warrant *sets forth the personal observations of an * * * affiant* the affidavit contains underlying circumstances from which conclusions can properly be drawn for the establishment of probable cause." (Emphasis added.) See, also, *State* v. *Kiraly, supra*; cf. *State* v. *Borsick, supra*, at 40: "There is no allegation that the informant *personally saw* any [of the stolen property]." (Emphasis added.)

Furthermore, the bare assertion that two *arrest* warrants were issued for two employees of the Fugi Health Club, standing alone, provides no probable cause to issue a *search* warrant. First, the affiant's unsupported assertion that they were issued is just that — unsupported. Second, there is simply no evidence in the record that officers Wade and Schliesser personally appeared before the issuing magistrate in this case and provided him with information they acquired during their undercover activities at the Fugi Health Club. In particular, there was no information contained in the affidavit relating to any personal· observations by the officers in executing the arrest warrants. Had they done so, and had their affidavits to that effect then been incorporated in the affidavit for *this* search warrant, we might reach a different result. (In this regard, we observe that the record indicates that the prosecution stipulated to the trial court that neither arrest warrant was incorporated in or attached to the instant affidavit.)

In addition, the affidavit indicates that the arrest warrants were obtained by the officers some *two weeks* before the search warrant. Even assuming that probable cause to arrest existed on November 25 and November 29, past probable cause to arrest does not supply present probable cause to search, notwithstanding the additional fact that probable cause to do one is not simultaneously probable cause to do the other.

In responding to appellant's arguments, the prosecution contends that the instant affidavit provided at least some probable cause to search for and seize monies that were exchanged for sexual services at the Fugi Health Club. This contention is largely based on the "fact" that "illegal sexual activity" prompted the issuance of arrest warrants for two of the club's employees. Thus, since the activities of appellant's employees furnished the basis for obtaining the arrest warrants on November 25 and 29, the prosecution would have us hold that this then supplied *probable cause to search appellant's business*. Yet, a third party's mere association with suspected criminals does not reasonably give rise to probable cause to search his person or property. See *Ybarra* v. *Illinois* (1979), 444 U.S. 85, 91.

As a final argument, the prosecution maintains that, taken together, the officer's past experience and the issuance of the arrest warrants, as recited in the affidavit, support a finding of probable cause. If, as we have concluded, each of these grounds standing alone would be insufficient to support a probable cause finding, then by what stretch of the imagination does a consideration of these grounds *together* obviate the myriad factual deficiencies in this particular probable-cause equation? Suffice it to say, that zero plus zero still equals zero. On the face of the affidavit, probable cause was lacking. Evidence seized during the search of the Fugi Health Club should have been suppressed, and the trial court erred in denying appellant's motion to do so. Accordingly, appellant's first assignment of error (including its subdivisions) is well-taken.

Given our disposition of appellant's first assignment of error, her second assignment of error is now rendered moot and is, for that reason, not well-taken.

On consideration whereof, this court finds that the Lucas County Court of Common Pleas erred in denying appellant's motion to suppress, and the judgment of said court is hereby reversed, and the plea and sentence entered thereon are hereby vacated. Pursuant to App. R. 12(B), we now render the order which the trial court should have rendered, to wit: all items seized as a result of the search of the Fugi Health Club on December 16, 1982, are ordered suppressed and are to be excluded from use at trial as evidence.

This case is remanded to the Lucas County Court of Common Pleas for entry of judgment, as herein specified, and for further proceedings according to law. Costs assessed against appellee state of Ohio.

*Judgment reversed and cause remanded.*

CONNORS, P.J., and RESNICK, J., concur.