DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which, following a trial to the bench, found appellant, Glenn Hall, guilty of one count of tampering with records, in violation of R.C. 2913.42, a felony of the fourth degree. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant appeals the decision of the trial court and raises the following assignments of error:
 {¶ 3} "1. It constituted error to deny appellant's motion to dismiss.
 {¶ 4} "2. Appellant's conviction is unsupported by the evidence.
 {¶ 5} "3. Appellant's conviction is against the manifest weight of the evidence.
 {¶ 6} "4. It constituted error to allow appellant to be prosecuted under a general statute where a statute of special application specifically covers the conduct alleged to constitute the criminal offense.
 {¶ 7} "5. It constituted error to deny appellant's motion to suppress."
 {¶ 8} This matter arose as a result of a liquor permit requested by Starlite Promotions, Inc. ("Starlite"). Appellant's wife, Geizle Spearman, was a stockholder in Starlite and had submitted an application to the Ohio Department of Commerce, Division of Liquor Control ("Commerce Department"), to obtain a liquor permit for a bar being operated at 1941 N. Detroit Avenue. As part of the application process, the Commerce Department requested additional information regarding other persons that may have an interest in the business. In response, appellant and his wife submitted separate affidavits which stated that appellant had no interest in the permit business.[1] Appellant's affidavit was signed on November 24, 1997. Ample evidence, generated on or between July 28, 1997 and May 31, 2000, was submitted at trial which established that appellant, in fact, did have a substantial financial interest in the permit business. Appellant and his wife, Geizle Spearman, were both charged with tampering with records, in violation of R.C. 2913.42.
 {¶ 9} Appellant argues in his first assignment of error that the trial court erred in denying his motion to dismiss. As a Toledo Police Officer, appellant was interviewed by Internal Affairs regarding his potential involvement with the permit business. Appellant argues that no information gained from him during this compelled interview could be used to connect him to the permit business for purposes of his criminal charge.
 {¶ 10} The state and this court agree that the information provided by appellant during these interviews may not be used against him during any subsequent criminal investigation. SeeState v. Sess (1999), 136 Ohio App.3d 689, 692; and Kastigarv. United States (1972), 406 U.S. 441, 460. A coerced statement is inadmissible in a criminal trial, unless that state can prove "in a `Kastigar hearing' by a preponderance of the evidence that the evidence it intends to introduce in a subsequent criminal proceeding is not tainted by exposure to the compelled statements", but, rather, is derived from a legitimate, independent source. United States v. Koon (1994), 34 F.3d 1416,1431. See, also, Murphy v. Waterfront Commission (1964),378 U.S. 52, 79. Hence, the state is prohibited from even using appellant's statements as a source of leads to further the investigation against him. In Kastigar, the Ohio Supreme Court stated:
 {¶ 11} "This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony."
 {¶ 12} Appellant was compelled by Captain Donald Kenney to make two statements to the Internal Affairs Department on March 31, 1999 and April 4, 2000, respectively. Appellant asserts that he provided information in these interviews which led to discovery of incriminating evidence that was used against him at trial. Appellant argues that the state failed to meet its burden of establishing, by a preponderance of the evidence, a legitimate, independent sources for the following general categories: (1) the existence and identity of Jerome King, who had an ownership interest in the subject premise in 2000; (2) the extent of appellant's involvement with the liquor business, specifically regarding checks he had written, payments he made for the business from his house, purchases of food or beverage, contacts with contractors, ownership of real estate, payment of utility bills, and loans made; (3) the existence and identity of Carmen Evans Watkins, appellant's wife's partner in Starlite, and Oliver "Amine" Watkins, purported manager of the permit premises; and (4) the existence of real estate holdings held in a "wrap mortgage," which, according to appellant, were the subject of extensive prosecutorial evidence at trial. We disagree with appellant's assertions.
 {¶ 13} As an initial matter, we note that Captain Kenney testified that he never provided any leads, which he had obtained from appellant during either interview, to Lieutenant Leo Eggert or Earl Mack, investigator for the Ohio Department of Public Safety, because appellant provided no leads. Additionally, Agent Mack confirmed that he did not receive any leads from Kenney. Kenney, however, testified that, with respect to an ongoing arson investigation, he provided Fire Fighter Andre Tiggs, arson investigator, information about other properties owned by appellant. Even assuming Kenney provided Investigator Tiggs with King's name, King testified that he spoke with Tiggs in March 2000. Hence, Tiggs was aware of King's ownership interest in 1941 N. Detroit Avenue long before appellant ever disclosed King's identity to Kenney. Accordingly, we find that the state clearly established an independent source for the information that King was the purported owner of 1941 N. Detroit during the year 2000.
 {¶ 14} With respect to information regarding the extent of appellant's involvement with the permit business, we find that appellant provided no information which could be used as a basis for any leads in this regard. Although asked extensively in the March 31, 1999 interview about his involvement with the business, specifically, whether he ever purchased food, liquor or goods for the business, whether he ever wrote checks for the business or paid bills for the business, or whether he arranged for contractors or paid contractors, appellant uniformly replied that, although these things were possible, he could not recall or remember doing any of these things for the business. Appellant asserts that, while some of the statements made by him were expressed with "some uncertainty or qualified denials, there was nevertheless a degree of substantive information conveyed on each of these points." We entirely disagree.
 {¶ 15} Appellant's lack of recollection, and the qualified responses he offered, provided no information or leads which could be used in any capacity to further the investigation. Moreover, we find that, although appellant stated that he may have purchased things for the business, provided loans, and/or provided blank checks, which were ostensibly used for business expenses, he nevertheless provided no particulars regarding the potential vendors, the amounts provided, or any other specific information which could have been of any use to the investigators, or been used as leads.
 {¶ 16} Appellant additionally argues that "[a]ll of the information provided was the subject of evidence presented by the prosecution during Appellant's trial and was the subject of the seizures made during the execution of the search warrant at Appellant's home, which were also used as evidence against Appellant during the criminal trial." This assertion is also unfounded. The only checks mentioned in the affidavit submitted to secure the search warrant for appellant's home were those concerning checks signed and issued by appellant to Auto Owners Insurance Company for insurance on the business and building. Appellant never stated that he had paid for insurance on the business. As such, the information concerning this check did not result from any of appellant's statements.
 {¶ 17} With respect to the identity of Carmen Evans Watkins, Investigator Mack testified that he had been investigating the hidden ownership issues concerning the subject premises since 1998. The liquor permit application, filed with the Commerce Department, and the attendant documents attached thereto, all list Geizle Spearman and Carmen Evans as the stockholders of Starlite. Additionally, the articles of incorporation filed with the Secretary of State for Starlite also list Spearman and Evans as the stockholders. Obviously, in investigating the ownership of 1941 N. Detroit Avenue, Mack would have discovered these public documents concerning the business's ownership. With respect to appellant's purported disclosure of the existence and identity of Oliver "Amine" Watkins, Carmen's husband, we note that it was Kenney, not appellant who initially brought up Oliver Watkins' name. Therefore, Kenney obviously was already aware of Watkins' involvement with the business before appellant's interviews.
 {¶ 18} We further find that appellant's alleged disclosure of the existence of a "wrap mortgage" was entirely ambiguous and would have been similarly useless to investigators in following up with any leads. Appellant spoke vaguely of 1941 N. Detroit Avenue having been purchased along with other properties, and with other owners and partners, but he denied knowing the names of the other alleged partners, besides Geizle, Carmen and Oliver. Moreover, appellant's only clear statement regarding this wrap mortgage was that the property was split up initially, upon the purchase of the properties, and that he only took the residential properties and one commercial property, but that the bar was left with Carmen and Geizle. We fail to see, and appellant is not clear on this point, how this information was used against appellant at trial or how it provided any leads for other information gathered by investigators.
 {¶ 19} Based on the foregoing, we find that the state proved a legitimate, independent source for the information mentioned by appellant that was also used at trial. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 20} Appellant argues in his second and third assignments of error that his conviction is unsupported by the evidence and against the manifest weight of the evidence. Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins at 387. The appellate court,
 {¶ 22} "`Reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 23} Specifically, appellant argues that his wife allegedly made false statements for the purpose of concealing activities of appellant; however, appellant asserts that his activities were not activities that constituted criminal conduct. Hence, appellant argues that "[j]ust because his wife's objective in committing an offense may have been to conceal certain activities of appellant does not make appellant an aider and abettor to the offense committed by his wife." We disagree.
 {¶ 24} R.C. 2913.42(A) states:
 {¶ 25} "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 26} "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;
 {¶ 27} "(2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."
 {¶ 28} The evidence clearly establishes that appellant's wife applied for a liquor permit under the name of Starlite Promotions, Inc. In a letter dated October 6, 1997, the Ohio Department of Commerce, Division of Liquor Control, requested that additional documents be submitted "in order to continue processing" Starlite's application. Specifically, the state requested "[a]n affidavit stating the person or other third party loaning the funds will have no interest in the permit business." According to Walter Skotynsky, attorney for Starlite, in response to its October 6, 1997 letter, appellant prepared and signed an affidavit on November 24, 1997. Skotynsky sent appellant's affidavit to the Division of Liquor Control on January 21, 1998. Appellant's affidavit stated:
 {¶ 29} "I, Glenn E. Hall, loaned Nineteen Thousand One Hundred Twenty-five and 00/100 Dollars ($19,125.00) to Starlight [sic] Promotions, Inc. This money was for the purchase of the liquor permit no. 0083369, D1, D2, D3, D3A, D6. I will have no interest in the permit business. If you have any further questions regarding this loan, you may contact me at (419) 255-0033."
 {¶ 30} The testimony and evidence presented at trial overwhelmingly established that appellant had a financial interest in the permit business and had an active role in the business's operations. Accordingly, upon reviewing the evidence, we find that there was sufficient evidence, if believed, to support a criminal conviction on the basis of R.C. 2913.42(A) with respect to appellant's actions in this case. We further find that the decision of the trial court was not against the manifest weight of the evidence. Appellant's second and third assignments of error are therefore found not well-taken.
 {¶ 31} Appellant argues in his fourth assignment of error that it constituted error to allow appellant to be prosecuted under a general statute where a statute of special application specifically covers the conduct alleged to constitute the criminal offense. Appellant argues that "[s]ince the General Assembly enacted Ohio Revised Code Section 2921.13(A)(5) to cover situations where false statements were made to secure issuance of a license or permit for a governmental agency, the General Assembly did not intend that the same conduct, prosecutable as a misdemeanor under Section 2921.13(A)(5), to be prosecutable as a felony under Ohio Revised Code Section 2913.42(B)(4)." Appellant argues that the situation in this case is analogous to that presented in State v. Volpe (1988), 38 Ohio St.3d 191. We disagree.
 {¶ 32} Well-established principles of statutory construction require that specific statutory provisions prevail over conflicting general statutes. R.C. 1.51 states that:
 {¶ 33} "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
 {¶ 34} In State v. Volpe, the Ohio Supreme Court found that R.C. 2915.02(A)(5) and 2923.24 were irreconcilable. R.C. 2923.24
generally made possession and control of criminal tools a felony of the fourth degree, whereas R.C. 2915.02(A)(5) specifically made possession and control of gambling devices a misdemeanor of the first degree. As such, the Ohio Supreme Court held that the specific statute concerning gambling devices, in particular, prevailed over the general statute which encompassed any criminal tool. The court held that the general statute could not be used to charge and convict a person of possessing and controlling a gambling device.
 {¶ 35} In this case, however, we find that R.C. 2921.13(A)(5) and R.C. 2913.42(B)(4) are not irreconcilable. R.C. 2913.42
prohibits any person from knowingly uttering any falsified "writing or record" which "is kept by or belongs to a local, state, or federal governmental entity * * *." Whereas, all that is necessary to violate R.C. 2921.13(A)(5) is that a person "knowingly make a false statement" for the purpose of securing "the issuance by a governmental agency of a license, permit, authorization, certificate, registration, release, or provider agreement." R.C. 2921.13(A)(5) clearly does not require that the statement be made in writing or that the falsified writing or record be kept by a governmental entity. As such, we find that the statutes to not prohibit the identical conduct and that a violation of R.C. 2921.13(A)(5) would not necessarily result in a violation of R.C. 2913.42.
 {¶ 36} Clearly, the General Assembly considered that the uttering of a falsified written document or record, that was to be maintained by a governmental agency, was more egregious conduct, necessitating a greater degree of offense, than making a statement, whether oral or written, for the purpose of securing the issuance of a license or permit. Moreover, we note that absent a discriminatory purpose, it is not unconstitutional for the prosecution to determine, within its discretion, which offense will be charged when two statutes proscribe similar conduct. State v. McDonald (1987), 31 Ohio St.3d 47, 50, citing, State v. Wilson (1979), 58 Ohio St.2d 52, 55, at fn. 2. As such, we find that it was properly within the state's discretion to proceed under R.C. 2913.42 with respect to appellant's conduct.
 {¶ 37} Accordingly, we find that the trial court did not err in denying appellant's motion for judgment of acquittal on this basis. Appellant's fourth assignment of error is therefore found not well-taken.
 {¶ 38} Appellant argues in his fifth assignment of error that the trial court erred in denying his motion to suppress. Specifically, appellant argues that the search warrant for the search of his home was overbroad, that the officers executing the search warrant exceeded the scope of the search warrant, and that the search warrant executed for the seizure and search of the computer was issued without a sufficient factual basis from which a finding of probable cause could have been made. Appellant argues that all evidence obtained pursuant to the search warrants should be suppressed because "this is not a case where the items seized beyond the scope of the warrant can be severed from those seized pursuant to the warrant."
 {¶ 39} In this case, the search warrant issued for the search of appellant's home directed the officers to search for and seize items described as follows:
 {¶ 40} "`* * * any and all records and documents tending to establish control, ownership and interest of all parties involved in Starlite Promotions Inc. located at 1941 N. Detroit Ave. Toledo, Ohio and the marriage of Glenn E. Hall, dob * * *, ssn * * * to Geizel [sic] A. Spearman, dob * * *, ssn * * *."
 {¶ 41} The Fourth Amendment to the United States Constitution provides that no warrants shall issue except those "* * * particularly describing * * * the things to be seized." See also Ohio Constitution, Article I, Section 14. An essential purpose of the particularity requirement is to prevent general exploratory searches. State v. Schlosser (May 24, 1996), Montgomery App. No. 14976, reversed on other grounds by State v. Schlosser
(1997), 79 Ohio St.3d 329. "The objective of the particularity requirement is to limit the discretion of the officers who perform the search." Id. The specificity required usually varies, depending upon the particular nature of the crime investigated and the nature of the evidence sought. State v. Benner (1988),40 Ohio St.3d 301, 307. Where the items to be seized are evidence or instrumentalities of a crime, "the key inquiry is whether the warrants could reasonably have described the items more precisely than they did." Id.
 {¶ 42} In State v. Schlosser, supra, the Second Appellate District held that "judicial officers must exercise caution where the description of records to be seized is so sweeping as to authorize a general exploratory search, for example, `all records' of a business. Nevertheless, where there exists probable cause to believe that a pervasive scheme to defraud permeates the entire operation of a business, all of the business records of that enterprise may be seized, and a simple description of the records of that business will suffice. See LaFave, Search and Seizure (Third Edition), Section 4.6(d) at fn. 95 (and cases cited therein)." In Schlosser, because the entire business operation appeared to be an elaborate scheme designed to defraud, the court concluded that all business related books, records, and equipment constituted evidence and instrumentalities of that fraud which police could properly seize.
 {¶ 43} In the instant case, we find that it would have been extremely difficult for the police to precisely describe all potential types of records or documents which could tend to establish control, ownership and interest of the parties involved with Starlite and the subject premises. Until the searches took place, the officers could not precisely know what particular items would establish the nature and extent of the parties' involvement in the subject property. Moreover, given the particular nature of the crimes under investigation and the manner in which they were alleged to have been committed, the items to be seized were clearly related to appellant's suspected criminal behavior.
 {¶ 44} Accordingly, we find that the items were described with as much specificity as was reasonable, given that law enforcement investigators had not yet examined the documents or pieced together the many types of transactions which could tend to reveal control, ownership, and interest. While the warrant arguably encompassed a broad variety of records and documents, the warrant did not permit the officers to simply take any item they wanted from appellant's home. We therefore find that the warrant placed a meaningful restriction on the executing officers, insofar as they could only seize those items that could tend to establish "control, ownership and interest" in the subject business.
 {¶ 45} Appellant additionally argues, however, that the officers executing the search warrant exceeded the scope of the search warrant and, as such, no good faith exception to the exclusionary rule can apply in this case. Specifically, appellant asserts that the officers assisting Agent Mack with the search warrant were "instructed to seize additional items not named in the warrant and that [were] not even mentioned or described in the affidavit that was submitted to obtain the warrant."
 {¶ 46} Pursuant to the testimony of the suppression hearing, the trial court determined that the officers were not instructed to seize anything beyond what was specified in the search warrant and that the scope of the search warrant was not exceeded. We agree. The officers conducting the search were instructed to look for items that could connect appellant or his wife with the subject premises. They were also given names of individuals and other businesses which were believed to have a potential connection with the subject business's control or ownership. The officers who testified regarding the items seized had a reasonable explanation and rationale for seizing the items they did. Given the hidden nature of the alleged crime, control, ownership or identity of those having a financial interest were not necessarily readily apparent on each document seized. Accordingly, we find that the items seized could have established control, ownership or a financial interest in the subject business, and that the officers seizing these items did so with good faith and did not exceed the scope of the warrant.
 {¶ 47} With respect to the search warrant issued for seizure of the computer in appellant's home, appellant argues that the warrant was issued on a "bare bones" affidavit and was without sufficient factual basis from which a finding of probable cause could have been made.
 {¶ 48} We initially note that appellant fails to indicate what incriminating evidence was obtained from the computer which should be suppressed. Nevertheless, we find that the affidavit was sufficient in this case.
 {¶ 49} The affidavit in question stated the following:
 {¶ 50} "On Friday August 11th, 2000, while executing a search warrant on the above listed address, officers of the Toledo Police Department, while conducting a search of the first floor rear office discovered records and documents that were found around the computer, tending to establish control, ownership and interest in Starlite Promotions. Based on the above evidence, it is believed that this computer contains other computer data, that will establish evidence."
 {¶ 51} Crim.R. 41(C), states in part:
 {¶ 52} "A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall * * * state the factual basis for the affiant's belief that such property is there located."
 {¶ 53} In State v. Bean (1983), 13 Ohio App.3d 69, 71, this court held that when reviewing an affidavit, we must "ensure, through a conscientious review of the affidavit, that the issuing magistrate had a `substantial basis' for concluding that probable cause existed to search. [Citations omitted.]" We further held that "`courts should not invalidate * * * warrant[s] by interpreting the affidavit[s] in a hypertechnical, rather than commonsense, manner.' United States v. Ventresca (1965),380 U.S. 102, 109. Affidavits should be (and must be) construed, interpreted and reviewed in a common-sense and realistic fashion.United States v. Seta (C.A. 6, 1982), 669 F.2d 400, 402.'" Id. at 73.
 {¶ 54} Clearly, in the day of home and office computers, commonsense tells us that the fact that records and documents, which tend to establish control, ownership and interest in the subject business, were found around the computer most likely indicates that other documents of this nature may still be on the computer. Accordingly, we find that the affidavit in question provided a substantial basis and that probable cause existed to issue a search warrant.
 {¶ 55} We therefore find that appellant's fifth assignment of error, regarding the search warrants issued in this case, is found not well-taken.
 {¶ 56} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Knepper, J., Pietrykowski, J. Singer, J. CONCUR.
[1] As a Toledo Police Officer, appellant was not permitted to own, manage or work in a bar or tavern in any capacity.