OPINION
{¶ 1} Plaintiff-appellant, Dublin Suites, Inc. ("DSI"), appeals from a judgment of the Franklin County Court of Common Pleas that granted judgment on the pleadings in favor of defendant-appellee, Shook, Inc. ("Shook").
 {¶ 2} In July 1998, DSI contracted with Corporex Constructors, Inc., now known as Corporex Development and Construction Management, Inc. ("Corporex"),[1] to be the general contractor for an Embassy Suites Hotel that was to be constructed in Dublin, Ohio. Corporex, in turn, contracted with Shook to perform all concrete work in the construction of the hotel.
 {¶ 3} According to DSI and Corporex, mistakes by Shook delayed the opening of the hotel by four and one-half months. Additionally, according to DSI and Corporex, Shook's alleged errors and deficiencies directly and proximately resulted in substantial back charges and overhead expenses to DSI and Corporex, additional financing expenses to DSI, and lost profits.
 {¶ 4} Due to a dispute concerning payment, in December 2000, Shook asserted a mechanic's lien against the hotel's land and building.
 {¶ 5} Subsequently, on January 4, 2001, Corporex and DSI sued Shook. In their complaint, Corporex and DSI alleged: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty; (4) negligence; and (5) failure to perform in a workmanlike manner.
 {¶ 6} Shook counterclaimed, alleging: (1) Corporex breached its contract with Shook; (2) Shook was entitled to judgment in foreclosure pertaining to its mechanic's lien; (3) DSI's retention of benefits of Shook's work constituted unjust enrichment; (4) Shook conferred a substantial benefit upon DSI, thereby entitling Shook to damages based upon quantum meruit; and (5) pursuant to R.C. 4113.61, Shook was entitled to prompt payment.
 {¶ 7} On May 3, 2001, Shook moved for partial judgment on the pleadings as to all of DSI's allegations against Shook.[2]
In its motion, Shook contended that it owed no duty to DSI. In opposition, Corporex and DSI argued that DSI was an intended third-party beneficiary of the contract between Corporex and Shook and, therefore, DSI was entitled to sue Shook under the contract between Corporex and Shook. Moreover, DSI also argued it properly could maintain an action in tort against Shook.
 {¶ 8} On August 14, 2001, the trial court granted in part Shook's motion for partial judgment on the pleadings. In its judgment, the trial court found in favor of Shook as to all of DSI's claims, except DSI's claim of negligence.[3] The entry of August 14, 2001, did not contain Civ.R. 54(B) language.
 {¶ 9} On August 30, 2001, Shook moved for reconsideration or, in the alternative, for leave to amend its counterclaim to assert a third-party claim. In a decision filed November 8, 2001, the trial court granted Shook's motion for reconsideration and denied Shook's alternative motion for leave to amend its counterclaim.
 {¶ 10} Later, on December 27, 2001, the trial court dismissed DSI's claim of negligence and dismissed with prejudice DSI as a party.[4] The trial court's entry of December 27, 2001, did not contain Civ.R. 54(B) language.
 {¶ 11} On January 30, 2002, DSI moved for reconsideration of the trial court's orders granting judgment on the pleadings. The trial court denied DSI's motion for reconsideration.
 {¶ 12} On June 6, 2003, pursuant to Civ.R. 15(A), DSI moved for leave to file a cross-claim instanter against Corporex.[5] The trial court granted DSI's motion.
 {¶ 13} On July 15, 2002, DSI moved for partial summary judgment in which it argued Shook's mechanic's lien was invalid and unenforceable, and, therefore, Shook's counterclaim involving the mechanic's lien should be dismissed or, alternatively, Shook's mechanic's lien should be reduced in value. Although the trial court agreed with DSI's contention that Shook's mechanic's lien should be reduced in value, the trial court nonetheless found genuine issues of material fact existed, and it denied DSI's motion for partial summary judgment.
 {¶ 14} On December 13, 2002, Corporex answered DSI's cross-claim and filed a third-party complaint to the cross-claim against Shook for indemnification. Six days later Shook moved to strike Corporex's third-party complaint, claiming Corporex's third-party complaint was procedurally improper and prejudicially untimely.[6] Approximately one month later, on January 14, 2003, Shook answered Corporex's third-party complaint and also counterclaimed against Corporex and DSI.
 {¶ 15} On December 24, 2002, claiming Corporex failed to raise available defenses in its answer to DSI's cross-claim, Shook moved to dismiss Corporex's third-party complaint and, alternatively, Shook moved for summary judgment as to all claims in Corporex's third-party complaint.
 {¶ 16} On January 15, 2003, DSI moved for an order instructing the Franklin Country Recorder to reduce Shook's mechanic's lien in accordance with the trial court's earlier order.
 {¶ 17} On February 11, 2003, DSI moved for an interlocutory appeal and stay of proceedings during the pendency of an appeal. The next day, DSI answered Shook's counterclaim that was filed on January 14, 2003, and simultaneously counterclaimed against Shook, claiming Shook maliciously slandered DSI's title to the hotel property and tortiously interfered with DSI's prospective contracts to secure refinancing.
 {¶ 18} On March 10, 2003, (1) the trial court granted DSI's motion for an interlocutory appeal and stay, and (2) the trial court entered a nunc pro tunc judgment in accordance with its earlier decisions[7] in which it dismissed with prejudice all of DSI's claims brought against Shook. In its nunc pro tunc judgment, for good cause shown and in accordance with Civ.R. 54(B), the trial court also expressly found there was no just reason for delay.[8]
 {¶ 19} DSI appeals from the trial court's nunc pro tunc judgment of March 10, 2003, and the trial court's earlier decisions that granted in part Shook's motion for partial judgment on the pleadings and Shook's motion for reconsideration. DSI initially requested placement of the appeal on this court's accelerated calendar.
 {¶ 20} Subsequently, Shook moved to dismiss DSI's appeal. This court later sua sponte transferred the case to its regular calendar and denied Shook's motion to dismiss DSI's appeal.
 {¶ 21} In this appeal, DSI assigns two errors:
1. The trial court erred in granting Shook, Inc. ("Shook") judgment on the pleadings as to the claims of Dublin Suites, Inc. ("Dublin Suites") for breach of contract, express warranty, and negligence claims because the terms of the subcontract between Shook and Corporex Development Construction Management, Inc. ("Corporex") demonstrate that Dublin Suites was an intended third-party beneficiary of the contract, which gives Dublin Suites standing to assert each of the claims. These errors appear in the Decision Granting in Part Motion for Partial Judgment on the Pleadings * * *.
2. The trial court erred in granting Shook judgment on the pleadings as to Dublin Suites' breach of implied warranty claim because the Supreme Court of Ohio permits owners to bring implied warranty claims against concrete suppliers, even in the absence of privity of contract. This error appears in Decision Granting in Part Motion for Partial Summary Judgment on the Pleadings * * *.
 {¶ 22} Because DSI's assignments of error are interrelated, we address them jointly.
 {¶ 23} Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."
A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. * * * In reviewing the trial court's decision to grant such a motion, this court conducts a de novo review of the legal issues without deference to the trial court's decision. * * * Dismissal of a complaint is appropriate under Civ.R. 12(C) where, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of the plaintiff as the nonmoving party, the court finds the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. * * *.
Anderson v. Interface Electric, Inc., Franklin App. No. 03AP-354, 2003-Ohio-7031, at ¶ 10.
 {¶ 24} Pursuant to Civ.R. 10(C), "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument attached to a pleading is a part thereof for all purposes."
 {¶ 25} Here, with their complaint, Corporex and DSI attached an incomplete copy of the contract between Corporex and Shook. Subsequently, however, Shook filed a purportedly complete copy of the written contract between Corporex and Shook with Shook's counterclaim of February 20, 2001, and Shook's motion for partial judgment on the pleadings. Therefore, pursuant to Civ.R. 10(C) and absent any claim that the purportedly complete contract between Shook and Corporex as contained in the record is not true or accurate, we conclude it is proper for us to review the written contract between Corporex and Shook as well as the pleadings.
 {¶ 26} Construction of written contracts is a matter of law.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.
(1997), 78 Ohio St.3d 353, 361, citing Aultman Hosp. Assn. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. "`The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" FosterWheeler Enviresponse, Inc., at 361, quoting Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 27} "`Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" Foster WheelerEnviresponse, Inc., at 361, quoting Alexander, paragraph two of the syllabus.
 {¶ 28} Furthermore, as stated in Foster WheelerEnviresponse, Inc., at 362, quoting Farmers Natl. Bank v.Delaware Ins. Co. (1911), 83 Ohio St. 309, paragraph six of the syllabus:
"In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain."
 {¶ 29} Initially, we observe that DSI did not allege in the complaint that it was a third-party beneficiary of the contract between Corporex and Shook.
 {¶ 30} Civ.R. 8(A), in pertinent part, requires that "[a] pleading that sets forth a claim for relief * * * shall contain * * * a short and plain statement of the claim showing that the party is entitled to relief * * *." "While Civ.R. 8(A) provides that a pleading which sets forth a claim for relief need not state all elements of the claim, enough must be pleaded so that the person or entity sued has adequate notice of the nature of the action." Saylor v. Providence Hosp. (1996),113 Ohio App.3d 1, 4. Even though Corporex and DSI's complaint fails to specify a third-party beneficiary theory as a basis for DSI's contract claim, we nonetheless find the complaint does indicate breach of contract as basis for recovery, thereby providing Shook with adequate notice of the nature of the action. See Iacono v.Anderson Concrete Corp. (1975), 42 Ohio St.2d 88, 92, quotingConley v. Gibson (1957), 355 U.S. 41, 48, 78 S.Ct. 99 ("[a]n important principle underlying the adoption of the Civil Rules is that the rules `reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of the pleading is to facilitate a proper decision on the merits'").
 {¶ 31} Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440 ("Section 302") concerns intended and incidental beneficiaries. Section 302, which was adopted as law in Hill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36, 40, states:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
Section 302, at 439-440.
 {¶ 32} In TRINOVA Corp. v. Pilkington Brothers, P.L.C.
(1994), 70 Ohio St.3d 271, order clarified by 71 Ohio St.3d 1202, the Supreme Court of Ohio stated:
Under this theory, only an intended beneficiary may exert rights to a contract of which he is not a party. The so-called "intent to benefit" test provides that there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party. * * *
Id. at 277-278. See, also, Chitlik v. Allstate Ins. Co.
(1973), 34 Ohio App.2d 193, 196 ("[t]he third party need not be named in the contract, as long as he is contemplated by the parties to the contract and sufficiently identified. Nor need the third party accept the contract, or even acknowledge its existence * * * but it must be shown that the contract was made and entered into with the intent to benefit the third person. A mere incidental or indirect benefit is not sufficient to give him a right of action"); Comment e to Section 302, at 443 (stating that "[p]erformance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created * * *").
 {¶ 33} Illustration 19 to Comment e offers the following example pertaining to construction contracts:
A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building.
Comment e, at 444. See, also, 9 Corbin on Contracts (2002 Interim ed.), Section 779D, at 40-41;[9] But, see, 3 Farnsworth on Contracts (2 Ed. 1998) 30-31, Section 10.4;[10]
Eisenberg, Third-Party Beneficiaries (1992), 92 Colum.L.Rev. 1358, 1402-1406.[11]
 {¶ 34} Thus, the issue resolves to whether the contract between Corporex and Shook was entered into with the intent to benefit DSI. See Section 302, at 439-440.
 {¶ 35} DSI argues the plain language of the contract between Corporex and Shook indicates the parties' intent that DSI was an intended third-party beneficiary. Specifically, DSI relies upon Sections J, K, L, and Z of the contract.
 {¶ 36} According to Section J, Shook agreed to obtain and keep in force various insurance coverages and to include DSI as an additional insured under all coverages required by the contract. Additionally, according to Section J, Shook agreed to be responsible for the proper care and protection of all delivered materials and performed work until completion and acceptance by DSI.
 {¶ 37} Under Section K, Shook agreed to guarantee its work and materials for a minimum of one year after completion and final acceptance by DSI and agreed to repair or correct any deficiencies during the prescribed period without cost to Corporex or DSI.
 {¶ 38} Under Section L, Corporex agreed that it would not be required to make any payment to Shook, unless Shook furnished to Corporex a statement under oath, and acceptable to DSI, that showed all monies due and payable by Shook for materials and labor furnished by Shook under the contract between Corporex and Shook.
 {¶ 39} According to Section Z:
Suggested changes in the scope of the Work by [Shook] which result in savings but which maintain the integrity of the system or systems will be considered and any savings resulting from the change will be shared equally by [Shook] and [DSI].
[DSI] reserves the right to make changes in the field and to retain any savings as a result. Changes which result in savings or additional compensation shall not in any way alter or void the original Subcontract. * * *
 {¶ 40} Notwithstanding DSI's contention, we do not find Sections J, K, L, and Z indicate an intent by Corporex and Shook to give DSI the benefit of the promised performance between Corporex and Shook, thereby conferring intended third-party beneficiary status upon DSI. See TRINOVA Corp., supra, at 278 (finding that under the "intent to benefit" test "there must be evidence, on the part of the promisee, that he intended todirectly benefit a third party * * *"). (Emphasis added.)
 {¶ 41} Here, although Sections J, K, L, and Z conferred upon DSI benefits, such as insurance coverages, right to have any deficiencies corrected without cost to DSI, right to condition payment based upon Shook's furnishing of a statement under oath showing all monies due and payable by Shook for materials and labor, and potential cost savings, we conclude such benefits only incidentally benefited DSI.
 {¶ 42} Moreover, additional language in the contract supports our conclusion that DSI was an incidental beneficiary. According to Section BB:
Subcontractor hereby covenants and agrees that in the event that the Owner removes Contractor from the project (pursuant to the Contract), then the Subcontractor shall perform all of the Work contemplated by this Subcontract for the benefit of Owner (or any affiliate of Owner). It is the intent of the parties hereto that in the event of such replacement of the Contractor, Contractor shall be deemed to have assigned to the Owner (or such affiliate) all of Contractor's rights under this Subcontract; provided, that such assignment shall be without prejudice to the rights and remedies of Contractor against Subcontractor.
 {¶ 43} Thus, because under the express terms of the contract, Corporex's rights would be assigned to DSI if Corporex were replaced as the general contractor, it logically follows that if Corporex were not replaced as the general contractor, its rights would not be assigned to DSI. Such a provision suggests that Corporex did not intend to directly benefit DSI under Corporex's contract with Shook.
 {¶ 44} Our conclusion is also consistent with Ohio law. See, e.g., Brewer v. H R Concrete, Inc. (Feb. 5, 1999), Montgomery App. No. 17254, appeal not allowed, 85 Ohio St.3d 1499 (finding, absent evidence of intent, subcontractors' knowledge regarding ownership of home did not confer intended third-party beneficiary status upon homeowners); Booher Carpet Sales, Inc. v. Erickson
(Oct. 2, 1998), Greene App. No. 98-CA-0007 (observing that "[a] landowner * * * is the usual third-party beneficiary of a subcontractor's performance. Yet courts have long recognized that, without something more, a landowner and subcontractor are not in privity of contract").
 {¶ 45} Accordingly, as a matter of law, DSI's contention that under the contract DSI was an intended third-party beneficiary is not supported by the contract's language, nor is DSI's contention consistent with persuasive authority. See Illustration 19 to Comment e to Section 302, at 444; 9 Corbin on Contracts (2002 Interim ed.), Section 779, at 40-41.
 {¶ 46} Therefore, because DSI is neither a party to the contract, nor is DSI an intended third-party beneficiary of the contract between Corporex and Shook, DSI's claims of breach of contract (count I of the complaint) and breach of express warranty (count II of the complaint), as a matter of law, must fail. See Grant Thornton v. Windsor House, Inc. (1991),57 Ohio St.3d 158, 161, certiorari denied, 502 U.S. 822, 112 S.Ct. 84, citing Visintine Co. v. New York, Chicago, St. Louis RR.Co. (1959), 169 Ohio St. 505 ("[o]nly a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio").
 {¶ 47} Nevertheless, in addition to claims of breach of contract and breach of express warranty, DSI also alleged breach of implied warranty, negligence, and failure to perform in a workmanlike manner.
 {¶ 48} In its breach of implied warranty claim (count III of the complaint), DSI alleged Shook breached (1) an "implied warranty of merchantability" and (2) an "implied warranty of workmanship and craftsmanship." (Complaint, at paragraphs 20 and 21.)
 {¶ 49} According to the contract between Corporex and Shook, Shook agreed to provide "all necessary labor, materials, tools, hoisting, equipment, insurances, taxes, proper supervision, etc. to furnish and install, in a safe workmanlike manner, all Concrete and rebar Work * * *." (Exhibit B attached to Contract dated October 30, 1998.) Thus, the contract between Corporex and Shook debatably involved a mixture of goods, i.e., materials, and service, i.e., labor. See, also, Mecanique C.N.C., Inc. v. DurrEnvironmental, Inc. (S.D.Ohio, Feb. 9, 2004), No. 2:01-cv-1216, ___ F.2d ___, 2004 WL 232764, 2004 U.S. Dist. LEXIS 1664 (construing Ohio law and observing that "[t]he burden of proof in a case of a mixed contract is on the party who asserts the contract is governed by the UCC").
 {¶ 50} In Allied Indus. Serv. Corp. v. Kasle Iron Metals,Inc. (1977), 62 Ohio App.2d 44, after reviewing out-of-state cases, the Sixth District Court of Appeals adopted the following approach when analyzing an agreement with a combined sale of goods and services:
[T]he test for the inclusion in or the exclusion from sales provisions is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved. * * *
Id. at 147. (Footnote omitted.) But, see, Mecanique C.N.C.,Inc., supra ("[w]hether a transaction predominantly involves goods or services is ordinarily a question of fact for the jury. * * * A jury, however, should only resolve this issue if there is a true factual dispute, not if the division between goods and services merely involves a close call * * *").
 {¶ 51} Here, the parties agree that, pursuant to the contract, Shook was to perform all concrete work for the hotel project, and the parties point to no disputed facts that are relevant to the issue of whether this contract was primarily for goods or services. Therefore, applying the predominant factor test, and based upon our independent review of the contract, we conclude the contract at issue primarily pertains to services, not the sale of goods. See, e.g., Langhals v. Holt Roofing Co.
(1988), 47 Ohio App.3d 114 (finding that in a contract for roofing repairs the service aspect predominated over the sales aspect, but reversing grant of summary judgment because genuine issue of material fact existed concerning whether express warranty under the contract was orally assigned).
 {¶ 52} Therefore, because an implied warranty of merchantability applies to goods, see, generally, R.C. 1302.27, and the contract in this case primarily pertains to services, not goods, as a matter of law, we conclude DSI cannot prevail with its claim of implied warranty of merchantability. See Prokasy v.Pearle Vision Ctr. (1985), 27 Ohio App.3d 44, 46, citing AlliedIndus. Serv. Corp, supra, at 146-147 ("[w]hen the transaction relates primarily to services, an incidental sale of merchandise does not make it a sales contract governed by the commercial code").
 {¶ 53} DSI also alleged a breach of "implied warranty of workmanship and craftsmanship" in which DSI claimed the "building was not built by Shook to be fit and satisfactory for the purposes intended." (Complaint, at paragraph 20.)
 {¶ 54} In Barton v. Ellis (1986), 34 Ohio App.3d 251, this court observed:
The duty to perform in a workmanlike manner is imposed by common law upon builders and contractors. * * * This duty is rooted in the English common law * * * and finds its first expression in Ohio law in Somerby v. Tappan (1833), Wright 229, and Somerby v. Tappan (1834), Wright 570, syllabus. * * * Subsequent developments in Ohio case law have rejected inferences from these earlier expressions upon which an implied warranty of fitness for a particular purpose might have been imposed by law * * * but have reaffirmed the duty to perform in a workmanlike manner. * * *
Id. at 252 (footnote omitted).
 {¶ 55} Here, because DSI alleged the building that Shook built was not fit and satisfactory for the purposes intended, we construe DSI's claim of an alleged breach of an "implied warranty of workmanship and craftsmanship" to be akin to a claim of a breach of an implied warranty of fitness for a particular purpose.
 {¶ 56} Relying upon Barton, supra, we therefore conclude that, as a matter of law, DSI cannot prevail with its claim of an "implied warranty of workmanship and craftsmanship" to the extent that DSI's claim is construed to be a breach of an implied warranty of fitness for a particular purpose.
 {¶ 57} DSI also alleged negligence (count IV of the complaint), wherein DSI claims Shook's alleged negligence caused "direct, proximate compensatory and consequential damages" to both DSI and Corporex. (Complaint, at paragraph 24.) In the complaint, DSI did not allege tangible physical harm to persons and tangible things.
 {¶ 58} As stated in Floor Craft Floor Covering, Inc. v.Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, "[i]n the absence of privity of contract between two disputing parties the general rule is `there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" Id. at 3, quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 657, Section 92.
 {¶ 59} In Floor Craft, the Supreme Court of Ohio considered "whether a contractor may sue an architect for economic injury in the absence of privity of contract between the parties." Id. at 3. The Floor Craft court held that "[i]n the absence of privity of contract no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications." Id. at syllabus. In reaching its decision, the Floor Craft court reasoned that "[t]here is no nexus here that can serve as a substitute for contractual privity." Id. at 8.
 {¶ 60} In Haddon View Investment Co. v. Coopers Lybrand
(1982), 70 Ohio St.2d 154, the Supreme Court of Ohio considered "whether an accountant retained by a limited partnership to perform auditing and other services may be held responsible to an identifiable group of limited partners in such partnership for negligence in execution of those professional services." Id. at 155. In Haddon View, the court held that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." Id. at syllabus.
 {¶ 61} Recently, this court considered whether a lack of contractual privity between homeowners and a subcontractor, who was hired by an architect that the homeowners retained, could prevent the homeowners' negligence claim against the subcontractor for economic damages. See Schoedinger v. Hess
(June 8, 2000), Franklin App. No. 99AP-1254.
 {¶ 62} Construing Floor Craft and Haddon View, theSchoedinger court stated that "[g]iven the nexus language inFloor Craft and the foreseeable plaintiff discussion in HaddonView, we find that a lack of direct contractual privity does not necessarily bar a party from maintaining a negligence claim for economic damages." [12]
 {¶ 63} Here, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of DSI, we find Shook reasonably knew that DSI was the incidental beneficiary of its work. Thus, DSI was a foreseeable plaintiff. See, e.g., Schoedinger, supra (concluding that subcontractor knew homeowners were the ultimate beneficiary of its work).
 {¶ 64} Therefore, applying Schoedinger, we conclude the trial court erred in dismissing DSI's negligence claim.
 {¶ 65} DSI has also alleged Shook failed to perform in a workmanlike manner (count V of the complaint).
 {¶ 66} According to Section H of the contract, Shook expressly agreed that "[t]he Subcontractor shall perform his Work in a neat and workmanlike manner * * *."
 {¶ 67} In this case, Shook contractually obligated itself to perform in a workmanlike manner, thus giving Corporex its assurance to perform in the manner represented in the contract. See, e.g., Lloyd v. William Fannin Builders, Inc. (1973),40 Ohio App.2d 507, 510 (finding the parties entered into a contract for the sale of a residence to be constructed by a builder-vendor and the obligation to construct in a workmanlike manner arose ex contractu). Cf. Velotta v. Leo Petronzio Landscaping, Inc.
(1982), 69 Ohio St.2d 376, 378-379 (stating that "[t]he obligation to perform in a workmanlike manner using ordinary care may arise from or out of a contract * * * but the cause of action is not based on contract; rather it is based on a duty imposed by law").
 {¶ 68} Consequently, because Shook's obligation to perform in workmanlike manner arose in contract and out of an express bargain it made with Corporex, and because DSI was neither a party to the contract nor an intended third-party beneficiary of the contract between Corporex and Shook, we conclude DSI cannot enforce this contractual provision pertaining to Shook's obligation to perform in a workmanlike manner. See GrantThornton, supra, at 161, citing Visintine Co., supra.
 {¶ 69} Nevertheless, the issue arises whether the complaint properly can be construed to allege Shook breached an implied
duty to perform in a workmanlike manner. See Velotta, at 378-379. See, also, Ohio Historical Society v. Gen. Maintenance Engineering Co. (1989), 65 Ohio App.3d 139, jurisdictional motion overruled (1990), 49 Ohio St.3d 708, citing Barton, supra (stating that "[t]he duty to perform construction services in a workmanlike manner sounds in tort and is implied by law").
 {¶ 70} In paragraph 20 of the complaint, DSI and Corporex alleged the following:
The aforesaid errors, omissions, oversights, mistakes, inadequate supervision inspection, scheduling and coordination, substandard workmanship and deficiencies of Shook, constitute a breach of the implied warranty of workmanship and craftsmanship between Defendant Shook and both Plaintiffs. Said building was not built by Shook to be fit and satisfactory for the purposes intended.
 {¶ 71} Earlier we construed DSI's allegation of a breach of an "implied warranty of workmanship and craftsmanship" to be akin to a claim of a breach of an implied warranty of fitness for a particular purpose. However, construing all material allegations in paragraph 20 of DSI's complaint along with all reasonable inferences drawn therefrom in favor of DSI as the nonmoving party, see Anderson, supra, at ¶ 10, we find DSI's allegation in paragraph 20 reasonably may also be construed to allege a breach of an implied duty to perform in a workmanlike manner.
 {¶ 72} DSI relies upon LaPuma v. Collinwood Concrete
(1996), 75 Ohio St.3d 64, to support a contention that, even in the absence of privity of contract, DSI properly may bring an implied warranty claim against concrete suppliers, such as Shook.
 {¶ 73} In LaPuma, a homeowner orally contracted with D D Cement to replace the homeowner's driveway. To accommodate the homeowner's special request concerning the driveway's coloring, a D D Cement representative recommended another company, Collinwood Shale, Brick Supply Company ("Collinwood"), to supply the colored concrete for the project. The homeowners contacted Collinwood and made a color selection. Several months after Collinwood poured the concrete, the homeowners noticed problems with the driveway's coloration. After attempts to remedy the problem failed, the homeowners sued Collinwood, alleging negligence and breach of an implied warranty of workmanlike quality. The trial court granted summary judgment in favor of Collinwood and an appellate court affirmed, although for different reasons.
 {¶ 74} Finding the homeowners had a common law claim against Collinwood, the LaPuma court reversed. Construing Iacono, supra, the LaPuma court stated:
* * * Despite the lack of privity between the plaintiff and the supplier, this court held that the plaintiff could maintain a tort action against the supplier based upon a theory of breach of implied warranty. While the imperfections to the driveway in the present case concern its color, we do not find that that significantly distinguishes this case from Iacono. Therefore, the LaPumas may pursue a claim of breach of implied warranty against Collinwood.
Id. at 67.
 {¶ 75} Thus, in LaPuma, the Supreme Court of Ohio allowed the homeowners to pursue a claim of breach of implied warranty against the concrete supplier, even though the homeowners lacked privity with the concrete supplier.
 {¶ 76} Here, the contract and pleadings are ambiguous as to whether Shook or another entity was the concrete supplier for the construction project.[13] According to exhibit B of the contract, Shook agreed, among other things, to "[f]urnish all ready mixed concrete for a complete concrete frame at the required strengths, proper slumps, and with the necessary add-mixtures to facilitate a consistent schedule throughout the year." Id. at item 6.
 {¶ 77} Because when reviewing a determination of a judgment on the pleadings an appellate court is required to construe all material allegations in a complaint along with all reasonable inferences drawn therefrom in favor of the nonmoving party,Anderson, supra, at ¶ 10, we therefore must conclude that, based upon the pleadings and attached contract, a reasonable inference from the contract suggests Shook itself may have been the concrete supplier for the construction project. Consequently, construing LaPuma and construing all material allegations along with all reasonable inferences drawn therefrom in favor of DSI, we find DSI stated a claim of an implied duty to perform in a workmanlike manner.
 {¶ 78} Furthermore, DSI properly may seek only economic damages pursuant to its claim of a breach of an implied duty to perform in a workmanlike manner. Construing Inglis v. Am. MotorsCorp. (1965), 3 Ohio St.2d 132, and Iacono, supra, the Supreme Court of Ohio has stated that, absent privity of contract, "in Ohio an action in tort for breach of express or implied warranty, or an action in strict liability, may be maintained for purely economic loss." Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins.Co. (1989), 42 Ohio St.3d 40, 49.[14] See, also, OhioDept. Adm. Serv. v. Robert P. Madison Internatl., Inc. (2000),138 Ohio App.3d 388, 397, appeal not allowed, 90 Ohio St.3d 1431
("find[ing] that a consumer, commercial or not, can maintain a claim for breach of implied warranty/strict liability against a manufacturer, not in privity, for purely economic loss").
 {¶ 79} Accordingly, DSI's contention that the trial court erred when it dismissed DSI's claim of an implied warranty to perform in a workmanlike manner is well-taken.
 {¶ 80} Consequently, for the foregoing reasons, DSI's claims in its first assignment of error that (1) the trial court erred when it found DSI was not an intended third-party beneficiary, and (2) the trial court erred when it found DSI could not sue for breach of contract and breach of express warranty are overruled. However, DSI's contention in its first assignment of error that the trial court erred when it granted judgment on the pleadings in favor of Shook with respect to DSI's negligence claim is sustained, although not for the reason that DSI propounds in its first assignment of error. Furthermore, DSI's claim in its second assignment of error that the trial court erred when it granted judgment on the pleadings in favor of Shook with respect to DSI's claim of an implied warranty to perform in a workmanlike manner is sustained. The remainder of DSI's claims in its second assignment of error are overruled.
 {¶ 81} Accordingly, having found the trial court properly dismissed DSI's claims, excepting DSI's claims of negligence and breach of an implied warranty to perform in a workmanlike manner, both of DSI's assignments of error are overruled in part and sustained in part. Therefore the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
Watson and Sadler, JJ., concur.
[1] According to DSI, DSI and Corporex are commonly-owned sibling companies. (Motion of DSI for reconsideration, filed January 30, 2002, at 2.) In 2000, Corporex Constructors, Inc., changed its name to Corporex Development and Construction Management, Inc. (Complaint, at paragraph 1.)
[2] In its motion of May 3, 2001, Shook also moved for partial judgment on the pleadings as to Corporex's allegations in counts two, three, four, and five of the complaint.
[3] In its judgment of August 14, 2001, the trial court also dismissed counts three and five that Corporex brought against Shook.
[4] Although the trial court dismissed with prejudice DSI as a party, Shook's counterclaims against DSI remained pending. Moreover, following the trial court's dismissal with prejudice of DSI, DSI continued to litigate the case and later moved for leave to file a cross-claim instanter against Corporex.
[5] Prior to DSI's motion for leave to file a cross-claim instanter, the trial court had observed that "[t]he contractual obligations between Corporex and Shook do not create tort duties in favor of DSI, a third party not in privity of the contract between Corporex and Shook. If DSI suffered a loss, its remedy is to seek redress through a breach of contract action against its general contractor, Corporex." ("Decision Granting Shook, Inc.'s Motion for Reconsideration Filed August 30, 2001/Decision Denying Shook, Inc.'s Alternative Motion for Leave to Amend Counterclaim, Filed August 30, 2001," filed November 8, 2001, at 6.)
[6] See, e.g., Civ.R. 14(A) (stating that after commencement of an action, a third-party complaint may be brought against a non-party to the action). Here, at the time Corporex filed its third-party complaint, Shook was a party to the action. Cf. Civ.R. 15 (amended and supplemental pleadings).
[7] See "Decision Granting in Part Defendant Shook, Inc.'s Motion for Partial Judgment on the Pleadings, Filed May 3, 2001," filed July 30, 2001; "Decision Granting Shook Inc.'s Motion for Reconsideration, Filed August 30, 2001," filed November 8, 2001.
[8] In its Nunc Pro Tunc Judgment Entry of March 10, 2003, the trial court also dismissed with prejudice counts three and five of the complaint brought by Corporex against Shook.
[9] As stated in Corbin:
"[Contracts between a principal contractor and subcontractor] are made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them. It seems, therefore, that the owner has no right against the subcontractor, in the absence of clear words to the contrary. The owner is neither a creditor beneficiary nor a donee beneficiary; the benefit that he receives from performance must be regarded as merely incidental." Id. (Footnote omitted.)
[10] As stated in Farnsworth:
"[A]n owner (C) has contracted with a general contractor (B) who has contracted with a subcontractor (A). The owner makes a claim `vertically' against the subcontractor for damages due to the subcontractor's delayed or defective performance. Here, too, the older cases generally denied recovery. Again, however, some have allowed the owner to recover as a creditor beneficiary despite the fact that the subcontractor's performance is not performance of the general contractor's duty to the owner to furnish a completed building. To the extent that such an owner is in a better position to insist on a contract clause to support its claim than is a contractor in a `multi-prime' situation, the owner who has not done so may be in a weaker position to seek judicial relief." Id. at 30-31. (Footnotes omitted.)
[11] Professor Melvin Aron Eisenberg states:
{¶ b} "Another recurring question in the construction setting is whether an owner can sue a subcontractor that has breached its contract with the prime. The results in these cases are mixed. Many cases have refused to permit an owner to bring suit against a subcontractor. Other cases have permitted such a suit, indicated that an owner's right to bring suit depended on the facts of the particular case, or held that the owner could recover on some theory other than third-party-beneficiary law, such as negligence or subrogation to the rights of the prime contractor.
{¶ c} "These mixed results reflect the underlying difficulties presented by the issue. It might be argued that an owner is a creditor beneficiary of the contract between the prime contractor and the subcontractor, on the theory that the subcontractor has agreed to perform an obligation that the prime contractor owes to the owner. Although the question is certainly not free from doubt, the better view seems to be that taken by Corbin:
{¶ d} "`[C]ontracts between a principal building contractor and subcontractors. . . . are made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items. . . . The owner is . . . [therefore not] a creditor beneficiary. . . .'
{¶ e} "Other courts have tried to solve the owner-subcontractor problem by applying the intent-to-benefit test. Given the unsatisfactory nature of that test, this approach has led to inconsistent results. * * * Since the object of the enterprise in all construction cases is to construct a project for the owner, references to the owner in contracts or other communications between the prime contractor and the subcontractor are not terribly illuminating. The bottom line is that the intent-to-benefit test has left the law in this area unsettled, and the analysis in the cases is most charitably described as picturesque. * * *
{¶ f} "What result is indicated under the third-party-beneficiary principle? Allowing the owner to sue a solvent subcontractor would ordinarily not be a necessary or important means of effectuating the performance objectives of the contracting parties (that is, the prime contractor and the subcontractor). A breach by a subcontractor will typically result in an injury to the prime contractor, because the prime contractor must either remedy the breach itself or pay damages to the owner. Accordingly, the prime contractor can normally sue the subcontractor for breach, and will have every incentive to do so. Indeed, in the normal case, allowing the owner to sue the subcontractor may tend to conflict with the prime contractor's administration of its contracts with subcontractors.
{¶ g} "However, when the defect in the subcontractor's work is discovered only after the owner has paid the full contract price and the prime contractor has become insolvent, the second branch of the principle is applicable. As a matter of corrective justice, as between the owner and the subcontractor, the cost of repairing the defective performance should be placed on the subcontractor. * * *
{¶ h} "* * * Allowing such a suit would not impair the performance objectives of the contracting parties. Because the construction process will have been completed, a suit by the owner against the subcontractor will not interfere with the normal administration of the construction process. If the subcontract contains special provisions limiting the subcontractor's damages, such as liquidated-damage clauses or limitations on consequential damages, those provisions should be taken into account in the owner's suit on the theory that if the owner wants to sue under the subcontract, he must accept its limitations. If provisions in the contract between the owner and the prime contractor limit the owner's rights, they too can be taken into account. Corrective justice does not require that the owner be made better off than he would have been if the prime contractor had not become insolvent and the owner's only recourse had been a suit against the prime." Id. (Footnotes omitted.)
[12] The Schoedinger court ultimately found, however, that the homeowners, David and Jeanne Schoedinger, were not foreseeable plaintiffs, and therefore the Schoedingers could not maintain a negligence claim for economic damages.
[13] In its appellate brief, Shook asserts that it "was not the manufacturer of the concrete; Shook provided only construction services." (Brief of appellee, at 31.) However, no evidentiary documentation is attached to the pleadings to support a contention that Shook was not the concrete manufacturer or concrete supplier. Thus, Shook's assertion in its appellate brief is not persuasive. See, e.g., Vaught v. Vaught (1981),2 Ohio App.3d 264, 265, citing Peterson v. Teodosio (1973),34 Ohio St.2d 161 ("[a] motion for judgment on the pleadings is proper when only questions of law are presented; the determination of the motion is restricted solely to the allegations of the pleadings").
[14] But, see, id., at 50, fn. 7 (finding that the court "need not reconsider the question whether, absent privity of contract, a plaintiff can recover purely economic losses under tort theories. While Inglis and Iacono held that such a plaintiff could recover, those decisions relied upon Santor [v. A MKaragheusian, Inc. (1965), 44 N.J. 52, 207 A.2d 305], which has subsequently come to represent the minority view and has been the subject of substantial criticism"). See, also, HDM FlugserviceGmbH v. Parker Hannifin Corp. (C.A. 6, 2003), 332 F.3d 1025, 1029
("although the Ohio Supreme Court did not explicitly reconsider or overrule its previous decisions permitting recovery for economic losses by a party lacking privity, the court [inChemtrol] implied there was considerable doubt whether those decisions would be reaffirmed in a future case").