DECISION ON MOTIONS FOR RECONSIDERATION
{¶ 1} Defendant-appellee, Shook, Inc. ("Shook"), moves this court to reconsider its decision in Corporex Dev. Constr.Mgt., Inc. v. Shook, Inc., Franklin App. No. 03AP-269, 2004-Ohio-1408 ("Corporex"). Plaintiff-appellant, Dublin Suites, Inc. ("DSI"), opposes Shook's motion for reconsideration and also moves for reconsideration of this court's decision inCorporex. For the following reasons, we deny both Shook's motion for reconsideration and DSI's motion for reconsideration.
 {¶ 2} "App.R. 26 provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law." State v. Owens (1997),112 Ohio App.3d 334, 336, dismissed, appeal not allowed,77 Ohio St.3d 1487. Pursuant to App.R. 26(A):
Application for reconsideration of any cause or motion submitted on appeal shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is the later. The filing of an application for reconsideration shall not extend the time for filing a notice of appeal in the Supreme Court.
Parties opposing the application shall answer in writing within ten days after filing of the application. Copies of the application, brief, and opposing briefs shall be served in the manner prescribed for the service and filing of briefs in the initial action. Oral argument of an application for reconsideration shall not be permitted except at the request of the court.
 {¶ 3} However, "[a]n application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court." Owens, at 336. Furthermore, "App.R. 26 does not provide specific guidelines to be used by an appellate court when determining whether a decision should be reconsidered or modified." Id. at 335. See, also, Matthews v. Matthews (1981),5 Ohio App.3d 140, 143.
 {¶ 4} In Matthews, this court stated, "[t]he test generally applied is whether the motion for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." Id. at 143.
 {¶ 5} In this case, judgment was rendered on March 23, 2004, but DSI did not move for reconsideration until April 26, 2004.[1] Thus, because DSI did not move for reconsideration within ten days after judgment was rendered as required by App.R. 26, DSI's motion for reconsideration is untimely. Because DSI's motion for reconsideration is untimely and we do not find DSI has shown good cause for leave to file instanter a motion for reconsideration, we therefore deny DSI's motion for reconsideration.
 {¶ 6} As a preliminary matter, we note this case is an appeal from a judgment on the pleadings. See, generally, Civ.R. 12(C). See, also, Corporex, supra, at ¶ 19. When considering a Civ.R. 12(C) motion, "[a] trial court may only consider the statements contained in the pleadings, and may not consider any evidentiary materials." Burnside v. Leimbach (1991), 71 Ohio App.3d 399,402. See, also, State ex rel. Montgomery v. Purchase PlusBuyer's Group, Inc. (Apr. 25, 2002), Franklin App. No. 01AP-1073 (observing that in an appellate's court independent review of the appropriateness of judgment on the pleadings, an appellate court considers only the pleadings and any instruments attached to the pleadings); McComb v. Suburban Natural Gas Co. (1993),85 Ohio App.3d 397, 400, jurisdictional motion overruled,67 Ohio St.3d 1438 (observing that an appellate court is limited to the pleadings when reviewing a judgment on the pleadings).
 {¶ 7} However, in both its merit brief and its motion for reconsideration, Shook relies in part upon language that allegedly was stricken from its contract with Corporex during contract negotiations and that was not included with the pleadings. (See, e.g., appellee Shook's brief, at 11-13; appellee Shook's motion for reconsideration, at 10-11.)
 {¶ 8} Because this court's review is limited to the pleadings, Shook's reliance upon evidence outside the pleadings, namely evidence related to Shook's contract negotiation with Corporex, is inapposite and we do not consider it in our analysis. However, we do consider the pleadings and the written contract that was attached to the pleadings. See Corporex,
supra, at ¶ 23-25 (discussion of copy of contract between Shook and Corporex that was attached to Shook's counterclaim and Shook's motion for partial judgment on the pleadings).
 {¶ 9} In support of this motion for reconsideration, Shook and amicus curiae, the American Subcontractors Association, contend this court in Corporex erred when it found the claims of DSI for negligence and breach of an implied duty to perform in a workmanlike manner were improperly dismissed by the trial court. See Corporex, at ¶ 80.
 {¶ 10} Here, Shook asserts that the economic loss doctrine[2] announced in Floor Craft Floor Covering, Inc.v. Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, precludes reliance upon tort law to recover for economic loss in construction contract cases. Furthermore, Shook contends this court in Corporex erred when it relied upon Haddon ViewInvestment Co. v. Coopers Lybrand (1982), 70 Ohio St.2d 154, and Schoedinger v. Hess (June 8, 2000), Franklin App. No. 99AP-1254, to support its decision.
 {¶ 11} In Floor Craft, the Supreme Court of Ohio considered "whether a contractor may sue an architect for economic injury in the absence of privity of contract between the parties." Id. at 3. Answering this query in the negative, the Floor Craft court held that "[i]n the absence of privity of contract no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications." Id. at syllabus. Thus, the actual holding of Floor Craft is narrower than the interpretation of Floor Craft that Shook asserts. See, also, Foster Wheeler Enviresponse, Inc. v.Franklin Cty. Convention Auth. (1997), 78 Ohio St.3d 353, 365
(declining to revisit, clarify, or define the parameters ofFloor Craft).
 {¶ 12} In Floor Craft, a hospital contracted with an architectural firm to prepare plans and specifications for a renovation project that included the installation of resilient vinyl floor. In a separate contract, the same hospital contracted with a flooring installation contractor to install the vinyl flooring. After the flooring was installed, problems arose. To correct the problems, the flooring installation contractor performed additional work at additional cost. Later the flooring installation contractor sued both the hospital and architectural firm, alleging, among other things, that the architectural firm was negligent in its plans and specifications and the hospital breached its contract with the flooring installation contractor. There was no direct contractual relationship between the flooring installation contractor and the architectural firm.
 {¶ 13} On appeal, the flooring installation contractor relied upon Haddon View, supra, in requesting the court to adopt a view that third parties not in privity with design professionals may recover economic damages. Floor Craft, at 6. See HaddonView, supra, at syllabus (holding that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance upon the accountant's representation is specifically foreseen").
 {¶ 14} In rejecting this view, the Floor Craft court stated, "As noted previously in this opinion there is generally no nexus found between subcontractors (in this case a flooring contractor) and architects that can serve as a substitute for contractual privity. * * * Although architects may anticipate that certain subcontractors will contribute to a construction project, the architects' services are generally extended to an unresolved class of persons unfixed in number." Id. at 6-7. See, also, Foster Wheeler Enviresponse, Inc.,78 Ohio St.3d at 365-366 (observing that "[p]rivity, or its substitute * * * serves only to identify an interest or establish a relationship necessary to allow for the bringing of a tort action for purely economic damages").
 {¶ 15} Here, the case at issue is distinguishable from FloorCraft because in this case the dispute is between an owner (DSI) and a subcontractor (Shook), not a subcontractor and a design professional. See Foster Wheeler Enviresponse, Inc. v. FranklinCty. Convention Facilities Auth. (1993), 88 Ohio App.3d 73, 76, jurisdictional motion overruled, 67 Ohio St.3d 1488 (observing that "[t]he syllabus in Floor Craft addresses those situations where a design professional has arguably been negligent in drafting plans and specifications"). See, also, Gardens of BayLanding Condominiums v. Flair Builders, Inc. (1994),96 Ohio App.3d 353, 362 (distinguishing Floor Craft and stating that "[t]he facts of Floor Craft and the instant case are distinguishable and Floor Craft is not controlling. Flair was the builder and developer, not just a design professional"). Cf.Standard Elec. Serv. Corp. v. Gahanna-Jefferson Pub. Schools
(Aug. 25, 1998), Franklin App. No. 97APE11-1520 (applying FloorCraft and determining that the trial court did not err by finding no cause of action existed between electrical contractor and architect).
 {¶ 16} Moreover, in this case DSI is not an "unresolved class of persons unfixed in number." Floor Craft, at 7. Thus, to the extent DSI is not an "unresolved class of persons unfixed in number" we find this case is akin to Haddon View, supra. Cf.Haddon View, at 156, quoting White v. Guarente (1977),43 N.Y.2d 356, 361, 401 N.Y.S.2d 474, 372 N.E.2d 315 ("`[h]ere, the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components * * *'"). See, also, Schoedinger,
supra (stating that "appellants [homeowners] certainly do not fit the description of a faceless, indeterminable class of persons akin to the public-at-large").
 {¶ 17} Furthermore, in Three-C Body Shops, Inc. v. WelshOhio, LLC, Franklin App. No. 02AP-523, 2003-Ohio-756, finding an appellant's reliance upon Floor Craft was misplaced, this court observed that Floor Craft's holding "has been limited to situations in which the parties had no direct interaction with one another." Id. at ¶ 18, citing Foster Wheeler Enviresponse,Inc. v. Franklin Cty. Convention Facilities Auth.,88 Ohio App.3d at 76, and Schoedinger, supra.
 {¶ 18} In this case, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of DSI, there is evidence to suggest DSI and Shook had direct interactions with one another. (See, e.g., complaint, at paragraph seven) ("Shook knew at the time of the contracting * * * that the Plaintiffs were relying on the technical skill, expertise and professional judgment of Shook * * *").[3] (Emphasis added.)
 {¶ 19} Because in reviewing the trial court's ruling on a motion for judgment on the pleadings we are required to construe all material allegations in favor of DSI, and having found reasonable inferences drawn from DSI's complaint imply that Shook may have had direct interaction with DSI, thereby serving as a substitute for privity, we conclude DSI could prove a set of facts in support of its claim that possibly would entitle DSI to relief. Consequently, we find no error in our opinion inCorporex wherein we concluded the trial court's dismissal of the complaint under Civ.R. 12(C) was impermissible. See, e.g.,Anderson v. Interface Electric, Inc., Franklin App. No. 03AP-354, 2003-Ohio-7031, at ¶ 10 (stating that "[d]ismissal of a complaint is appropriate under Civ.R. 12[C] where, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of the plaintiff as nonmoving party, the court finds the plaintiff can prove no set of facts in support of his claim that would entitle him to relief").
 {¶ 20} Thus, we find our decision in Corporex that the trial court impermissibly dismissed DSI's negligence claim is supportable under the law. See Corporex, at ¶ 80.
 {¶ 21} Nevertheless, Shook argues that Corporex's
application of the reasoning of Haddon View and Schoedinger
is tantamount to holding that every owner can maintain tort claims against all subcontractors and, conversely, all subcontractors can maintain tort claims against owners.
 {¶ 22} We do not agree with Shook's characterization of our decision in Corporex. In Corporex, we did not determine that every owner can maintain a tort claim against all subcontractors or that all subcontractors can maintain tort claims against owners. Nor did we decide in Corporex that the evidence supported DSI's claims. Rather, in Corporex we only determined whether, as a matter of law, DSI sufficiently stated claims in its complaint that should have precluded judgment on the pleadings. For DSI to ultimately prevail, DSI will still need to prove each of the requisite elements of the claims that it asserts under the quantum of proof assigned to a civil plaintiff. See, e.g., Cincinnati, Hamilton Dayton Ry. Co. v. Frye
(1909), 80 Ohio St. 289, paragraph two of the syllabus (holding that "[i]n civil cases the jury deals only with probabilities, and the burden of proof is ordinarily carried by a preponderance of the evidence * * *"); State v. Werfel, Lake App. No. 2002-L-101, 2003-Ohio-6958, at ¶ 53 (comparing standard of proof in criminal case with standard of proof in civil case).
 {¶ 23} Furthermore, construing all material allegations in the complaint along with all reasonable inferences drawn therefrom in favor of DSI, we must conclude there is a reasonable inference that Shook may have been the concrete supplier for the construction project and, therefore, DSI stated a claim of an implied duty to perform in a workmanlike manner. See Corporex,
at ¶ 77. See, also, id., at ¶ 76 (finding the contract and pleadings are ambiguous as to whether Shook or another entity was the concrete supplier for the construction project).
 {¶ 24} In Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins.Co. (1989), 42 Ohio St.3d 40, 49, construing Inglis v. Am.Motors Corp. (1965), 3 Ohio St.2d 132, and Iacono v. AndersonConcrete Corp. (1975), 42 Ohio St.2d 88, the Supreme Court of Ohio stated that, absent privity of contract, "in Ohio an action in tort for breach of express or implied warranty, or an action in strict liability, may be maintained for purely economic loss." See, also, Chemtrol Adhesives, Inc., at 50, fn. 7 (finding that the court "need not reconsider whether, absent privity of contract, a plaintiff can recover purely economic losses under tort theories. While Ingliss and Iacono held that such a plaintiff could recover, those decisions relied upon Santor,
which has subsequently come to represent the minority view and has been the subject of substantial criticism"). But, see,Corporex, at ¶ 78, fn. 14 (citing HDM Flugservice GmbH v.Parker Hannifin Corp. (C.A. 6, 2003), 332 F.3d 1025, 1029
[questioning whether Chemtrol's decision permitting recovery of economic losses by a party lack privity would be reaffirmed in a future case]).
 {¶ 25} "A court of appeals is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled." Sherman v. Millhon
(June 16, 1992), Franklin App. No. 92AP-89, dismissed, jurisdictional motion overruled, 65 Ohio St.3d 1454, citingBattig v. Forshey (1982), 7 Ohio App.3d 72, and Thacker v. Bd.of Trustees of Ohio State Univ. (1971), 31 Ohio App.2d 17, affirmed (1973), 35 Ohio St.2d 49, overruled in part on other grounds, Schenkolewski v. Cleveland Metroparks System (1981),67 Ohio St.2d 31, paragraph one of the syllabus. See, also,James A. Keller, Inc. v. Flaherty (1991), 74 Ohio App.3d 788,792 (stating that "[i]n Ohio, our Supreme Court is the primary judicial policymaker. As an intermediate appellate court, we should use caution in determining what the public policy of this state should be. Only when the issue is squarely before us should we address it").
 {¶ 26} Accordingly, we find that our conclusion in Corporex
that the trial court improperly dismissed DSI's claim of a breach of an implied duty to perform in a workmanlike manner is also supported by law. See Corporex, at ¶ 80.
 {¶ 27} Therefore, finding our decision in Corporex is supported by law and does not contain an obvious error or raise an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been, we therefore deny Shook's motion for reconsideration. Additionally, because DSI did not timely move for reconsideration, DSI's motion for reconsideration is denied. Moreover, to the extent that DSI's filing of April 26, 2004, may be construed as a motion for leave to file instanter a motion for reconsideration, because DSI has not shown good cause for its failure to timely move for reconsideration, DSI's motion for leave to file instanter its motion for reconsideration is therefore denied.
Motions for reconsideration denied.
Watson and Sadler, JJ., concur.
[1] See fn. 6 of its filing of April 26, 2004, in which DSI requested an extension to file a motion for reconsideration; we construe DSI's request as a motion for leave to file instanter a motion for reconsideration. However, upon review of the circumstances, we do not find DSI has shown good cause for its failure to timely file a motion for reconsideration. We note that on April 12, 2004, the parties jointly moved for an extension of time to allow DSI to file its brief in response to Shook's motion for reconsideration and this court granted the parties' joint motion.
[2] See, e.g., 5 Bruner O'Connor on Construction Law (2002) 796, Section 17:88, fn. 2 (stating that "`[e]conomic loss' has been defined as: Damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits — without any claim of personal injury or damage to other property . . . as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes of which it was manufactured and sold"). See, also, Black's Law Dictionary (7 Ed. 1999) 531 (defining "economic-loss rule" as, inter alia, "[t]he principle that a plaintiff cannot sue in tort to recover for purely monetary loss — as opposed to physical injury or property damage — caused by the defendant").
[3] In paragraph seven of its complaint of January 4, 2001, DSI and Corporex Development Construction Management, Inc. ("Corporex") alleged: "* * * Shook agreed and knew that time was of the essence in its performance of scheduled work. All of its work was to be completed in twenty-seven (27) weeks from the start date on site. Shook knew at the time of the contracting, of the particular purpose for which its respective goods and services were required, that the Plaintiffs were relying on the technical skill, expertise and professional judgment of Shook to supply proper materials and to erect and implace the concrete in a sound, usable and defect free manner and that such building must be suitable for the general and particular purposes that Plaintiffs intended and bargained for."